IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROSE URE MEZU                    *
                                 *
v.                               *
                                 *    Civil Action No. WMN-09-2855
MORGAN STATE UNIVERSITY          *
et al.                           *
                                 *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

The following motions have been filed and are pending in

this action: Plaintiff's Motion for Preliminary Injunction,

Paper No. 4; Plaintiff's Motion for Default Judgment, Paper No.

6; Defendants' Motion to Dismiss, Paper No. 9; Defendants'

Motion for Extension of Time for Filing Motion to Dismiss, Paper

No. 12; Defendants' Motion to Set Aside Default, Paper No. 14,

and Plaintiff's Motion for Leave to File Surreply, Paper No. 21.

The motions are fully briefed.  Upon review of the motions and

the applicable case law the Court determines that no hearing is

necessary and that Plaintiff's Motion for Preliminary Injunction

and Motion for Default Judgment will be denied; Defendant's

Motion to Extend Time will be granted, Defendant's Motion to

Dismiss will be granted in part and denied in part, Defendants'

Motion to Set Aside Default will be denied as moot, and

Plaintiff's Motion for Leave to File Surreply will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a black woman of Nigerian nationality and Igbo ethnicity, has been employed by Defendant Morgan State University (MSU) since January 1993 in the Department of English and Language Arts.  Defendant Dolan Hubbard, is and was during all times relevant to this action the Chairperson of that Department.  Defendant Armada Grant is and was at all times relevant the Director of MSU's Department of Human Resources.

In the Fall of 1993, Plaintiff was promoted to the tenure track, and in 1998 she was promoted to tenured Associate Professor of English.  On June 5, 2000, Plaintiff was denied a promotion to the rank of full Professor and, thereafter, filed a charge with the Equal Employment Opportunity Commission (EEOC) on August 18, 2001.  After receiving her right-to-sue letter, Plaintiff filed suit against MSU and Hubbard asserting both a failure to promote claim and a "hostile environment" claim under Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 2000e, et seq. (Title VII), an Equal Pay Act (EPA) claim, and a claim under the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601, et seq. (FMLA).  Mezu v. Morgan State Univ., Civ. No. JFM-02-3713 (D. Md.) (Mezu I).

In a memorandum and order issued March 31, 2003, Judge J. Frederick Motz of this Court dismissed Plaintiff's failure to promote claim finding that, although Plaintiff had filed a

charge with the EEOC, she did not do so within the 300 days mandated under Title VII.  Mezu v. Morgan State Univ., 264 F. Supp. 2d 292, 295 (D. Md. 2003).  Judge Motz also dismissed Plaintiff's EPA claim because she alleged national origin discrimination only and not gender-based discrimination.  He also dismissed her Family Medical Leave Act claim on the ground of Eleventh Amendment immunity.[1]  Finally, Judge Motz entered summary judgment for the defendants on Plaintiff's hostile work environment claim, concluding that the alleged harassment was not "sufficiently 'severe or pervasive' to constitute a hostile work environment."  Id. at 296.[2]  On October 16, 2003, the Fourth

---

[1] Shortly after Judge Motz rendered this decision, the Supreme Court overturned the Fourth Circuit precedent upon which he relied in making this ruling.  See Nevada Dept. Of Human Resources v. Hibbs, 538 U.S. 721 (2003) (holding that Congress validly abrogated states' Eleventh Amendment immunity with regard to the "family-care" provision of the FMLA).

[2] In summarizing the allegations proffered to support her hostile environment claim, this Court noted that,

> the only specific references to Dr. Hubbard involve instances where he questioned her about the details or finances of a conference or forum she was planning, questioned her about her absence from class, banned her from making photocopies for a conference from the English department office, or removed her from teaching an experimental course without his permission.

264 F. Supp. 2d at 296.

Circuit affirmed Judge Motz's ruling.  <u>Mezu v. Dolan</u>,[3] 75 Fed.

Appx. 910 (4th Cir. 2003).

In 2005, Plaintiff again applied for a promotion.  This

application was denied on April 6, 2006, and as a result, on

March 25, 2007, Plaintiff filed a second charge with the EEOC.

After receiving her right-to-sue letter, Plaintiff filed a

second suit in this Court, <u>Mezu v. Morgan State Univ.</u>, Civ. No.

WDQ-08-1867 (D. Md.) (<u>Mezu II</u>), on July 18, 2008.  In this

second suit, Plaintiff alleged that she was denied a promotion

based upon her national origin and race and also in retaliation

for engaging in protected EEOC activities.  Judge William D.

Quarles dismissed this action on March 23, 2009, concluding that

Plaintiff again failed to timely file her charge with the EEOC

related to her failure to promote claim.  Judge Quarles also

found that Plaintiff failed to exhaust her retaliation claim and

dismissed that claim as well.  Just recently, on February 19,

2010, the Fourth Circuit affirmed that decision.  <u>Mezu v. Morgan</u>

<u>State Univ.</u>, No. 09-1447.

On July 22, 2009,[4] while the appeal in <u>Mezu</u> II was still

pending, Plaintiff filed a third charge with the EEOC.  In that

---

[3] Due to a clerical error, Defendant Dolan Hubbard's first and
last names were apparently transposed in the caption on appeal.
The undersigned made the same error in its previous memorandum
in this action.  Jan. 14, 2010 Mem. and Order at 2.

charge, she alleged discrimination on the basis of race, sex, national origin, and retaliation.  The EEOC issued its right to-sue-letter on this last charge on August 6, 2009.

Plaintiff filed the instant suit in this Court on October 28, 2009, again raising retaliation and hostile environment claims under Title VII (Counts I and II, respectively) as well as "interference" and retaliation claims under the FMLA (Counts III and IV, respectively).[5]  Although she includes the long history of her previous allegations of discrimination as "context" for her current charges, she focuses her Complaint on two specific courses of events that she characterizes as "recent hostile actions cognizable under Title VII."  Compl. ¶¶ 38-70.

The first course of events arose out of Plaintiff's desire to attend the funeral of her mother in Nigeria.  Plaintiff's mother passed away on November 6, 2008, and her burial was planned for November 26, 2008.  Plaintiff made plans to depart for Nigeria on November 22, 2008, and arranged for her classes to be covered by other faculty members.  She also informed MSU's

---

[4] The Complaint alleges that Plaintiff filed her Charge of Discrimination with the EEOC on July 10, 2009.  Compl. ¶ 38. The signature date on the actual charge, however, is July 22, 2009.

[5] At times, Plaintiff seems to have forgotten that she asserted a retaliation claim under the FMLA.  See Opp'n to Mot. to Dismiss at 8 (representing that "[t]he Complaint states three counts – A Title VII retaliation claim, a Title VII discrimination claim, and a claim for interference under the FMLA").

Human Resources Department of her intention and was given a Family and Medical Leave Request form to complete which she promptly filled out and returned on November 18, 2008.[6]  When Plaintiff informed Defendant Hubbard of her plans to attend her mother's funeral, he responded with an email "threatening [Plaintiff] with the 'consequences' of an 'unauthorized absence.'"  Compl. ¶ 46.

While Plaintiff was in Nigeria, Defendant Grant sent her a letter dated November 25, 2008, stating that the burial of a parent was not a basis for leave under the FMLA and thus her request was denied.  Grant indicated, however, that Plaintiff could apply for "sick-bereavement leave" but did not explain why she initially gave Plaintiff the incorrect forms to complete. Plaintiff promptly applied for sick-bereavement leave.[7]  While in Nigeria, Plaintiff herself became ill and was advised not to travel.  Because of that delay, Plaintiff missed the first day of classes for the term starting in January 2009.

The second course of events arose when Plaintiff's daughter suffered a subarachnoid hemorrhage following a cerebral aneurysm in August 2009 that required emergency brain surgery.  On August

---

[6] The Complaint states that the form was submitted on November 18, 2009, which the Court assumes to be a clerical error. Compl. ¶ 43.

[7] Plaintiff does not allege that this request was denied and the Court can reasonably infer that the request was granted.

13, 2009, Plaintiff applied for Family and Medical Leave for the period August 31, 2009, to October 2, 2009, to care for her daughter.  On August 17, 2009, Plaintiff took a day off of work to be with her daughter.  Defendant Hubbard threatened to terminate Plaintiff for missing that day and in a letter dated August 17, 2009, demanded that Plaintiff appear at a meeting he had scheduled and further stated that her failure to do so would be "regarded as insubordination."  Compl. ¶ 65.  After Defendant Hubbard learned of Plaintiff's FMLA request, he again sent a letter threatening termination.  Id. ¶ 67.  In a letter from Defendant Grant dated September 18, 2009, Plaintiff was informed that her request for leave under the FMLA was denied, at least at present, and that MSU required further information from Plaintiff's daughter's physician before leave could be granted.[8]

In response to Grant's September 18, 2009, letter, Plaintiff contacted her daughter's physician, Dr. Judy Huang, and within a few days, Dr. Huang furnished the requisite certification and Plaintiff resubmitted her request.  In her new request, dated October 6, 2009, Plaintiff asked for FMLA leave through December 4, 2009, based on Dr. Huang's extension of the time needed for her daughter's recuperation.

---

[8] The narrative in the Complaint stops at this point in time but is continued in Plaintiff's Motion for Preliminary Injunction and other pleadings she has filed.

Plaintiff received no response from MSU until mid-November when she received a letter from Grant dated November 13, 2009, stating that "[i]nasmuch as we have not received the proper medical documentation to authorize the use of sick leave . . . you have been placed on a leave without pay status effective immediately." Mot. for Prelim. Inj., Ex. 6. The letter further threatened that "retroactive reimbursement of previously paid salaries may be required." Id. Plaintiff was taken off the payroll and on November 24, 2009, she received notice that, as of the pay period ending November 17, 2009, she would be responsible for payment of the entire amount of her health insurance premium, $817.37 every two weeks, or her health insurance would be cancelled. Plaintiff states that, without any salary coming in, she was forced to borrow money to pay these premiums.

Plaintiff returned to work on December 4, 2009. On that date, she hand delivered a letter to Defendant Grant informing Grant that she was back at work and confirming the re-submission of a FMLA leave request form. Mot. for Prelim. Inj., Ex. 9. On December 7, 2009, Plaintiff sent a letter to Grant protesting the non-payment of her salary and benefits. Pl.'s 1/28/10 Supp. Aff., Ex. 3. Plaintiff also called Grant to remind her that she was back at work, but Grant "slammed the phone down rather than continue the conversation." Pl.'s 1/29/10 Supp. Aff. at ¶ 5.

Concerned that she was not being paid, despite the fact she had returned to work, and that her health insurance was about to be terminated, Plaintiff filed her motion for preliminary injunction on December 18, 2009.  Shortly thereafter, on January 5, 2010, Plaintiff filed a motion for a default judgment based upon the Defendants' failure to respond to the Complaint.  The Clerk of the Court entered a default against each of the Defendants on January 7, 2010.

When no response was filed by Defendants either to the Complaint, the Motion for Default Judgment, or the Motion for Preliminary Injunction, the Court issued an order on January 14, 2010, scheduling an evidentiary hearing on the preliminary injunction for January 26, 2010.  It is important to note (although the parties apparently have not) that, while the Court acknowledged and briefly discussed Plaintiff's pending motion for default judgment in its January 14 Memorandum and Order, it did not grant that motion, nor did it proceed to enter any judgment against any Defendant.  After opining that "it would appear that Plaintiff's allegation support at least some of her theories of liability," the Court noted that some discovery, followed by a hearing, would be necessary "before any actual judgment can be entered against Defendants."  1/14/10 Mem. & Order at 3 (emphasis added).

Later on January 14, 2010, Defendants filed their motion to dismiss, apparently unaware that the Court had entered its memorandum and order earlier in the day.  With that motion, Defendants filed a motion to allow the late filing of the motion to dismiss and an opposition to the motion for default judgment.[9] On January 21, 2010, Defendants filed a "Motion to Set Aside Default Judgment," despite the fact the Court had not entered judgment.  While Defendants indicated in that pleading that they were "filing contemporaneously with this motion the response to the plaintiff's motion for preliminary injunction," Paper No. 14-1 at 3, it was not until January 25, 2010, that Defendants actually filed that response.  In the meantime, on January 21, 2010, the Court issued a letter order continuing the hearing on the motion for preliminary injunction to allow the pending motions to be fully briefed.

The Court has learned through these various pleadings that it was not until mid-January that MSU returned Plaintiff to its payroll.  Defendants now claim that MSU has deemed Plaintiff to have been on paid sick leave from August 31, 2009 through December 4, 2009.  Defendants also claim that payments have been made to Plaintiff to reimburse her for the salary that they mistakenly withheld and for the benefits that Plaintiff had to

---

[9] Defendants attempted to file this pleading on January 14, 2010, but for reasons not clear from the record, it was not accepted by the Clerk's Office for docketing until January 15, 2010.

10

pay out of pocket.  Plaintiff challenges the representation that
she has been fully compensated and also identifies specific
injuries that she suffered because of Defendants' actions,
including the following:

> 1) various bills went unpaid and direct debits
> from her credit union were dishonored;
>
> 2) she was kicked out of a preferential mortgage
> rate program that would have saved her $100,000 over
> the life of the loan;
>
> 3) she received cancellation notices for both her
> health and automobile insurance;
>
> 4) she was unable to attend the memorial service
> for her mother in Nigeria because she did not have the
> funds to pay for the trip;
>
> 5) she did not have the funds to purchase heating
> oil to heat her home and, as a result, suffered the
> embarrassment of having no heat in her home for a
> long-scheduled family New Years dinner party; and
>
> 6) her credit history has been damaged by her
> inability to make scheduled payments.

Pl.'s 2/5/10 Supp. Aff.

In addition to Defendants' conduct related to these two
specific courses of events - the 2008 denial of bereavement
leave and the 2009 denial of FMLA leave - Plaintiff points to
other more generalized conduct on the part of Defendants that
she believes to be discriminatory.  Plaintiff alleges that
Defendant Hubbard subjected her time sheet to intense scrutiny;
insisted that she mark her time sheets "absent" on official
university holidays; sought out students to make complaints

about Plaintiff; and throughout 2008 and 2009, on a weekly basis, threatened Plaintiff with discipline or termination without cause.  Compl. ¶¶ 51-59.  Plaintiff avers that other faculty members were not subjected to the same treatment and that the treatment persisted despite Plaintiff's reporting of Hubbard's harassing behavior to university officials.  Plaintiff also complains that she has been denied the opportunity, during the current semester, to teach a specific class that she had previously designed.

## II. MOTION FOR DEFAULT JUDGMENT/MOTION TO SET ASIDE

Defendants' explanation for their failure to timely respond to the complaint is certainly not the most compelling ever presented.  As noted in this Court's previous memorandum, Plaintiff served a summons and the complaint on Defendant Grant on November 20, 2009, on Defendant Hubbard on November 24, 2009, and on Defendant MSU on December 3, 2009.  Defendants' counsel explains that she was forwarded the Complaint from the Civil Division of the Maryland Attorney General's Office on or about December 4, 2009, but it came with no cover sheet indicating that service had been completed.  She then "placed the Complaint and Summons in the file awaiting proper service."  Mot. to Set Aside at 1.  She asserts that she did not learn that Defendants were properly served until she received by mail on January 7, 2009, Plaintiff's motion for entry of default judgment along

with the attached affidavits of service.  As further explanation
for her tardiness, Defendants' counsel offers the fact that MSU
was closed for the winter holidays between December 21, 2009,
and January 4, 2010.

Rule 55(c) of the Federal Rules of Civil Procedure
provides, "[f]or good cause shown the court may set aside an
entry of default and, if a judgment by default has been entered,
may likewise set it aside in accordance with Rule 60(b)."
Contrary to the assumption of Plaintiff and Defendants, a
default judgment has not been entered against Defendants in this
action so Defendants' Motion to Set Aside Default Judgment is
more properly treated as a motion to set aside a default and is
to be decided under Rule 55(c) rather than Rule 60(b).  District
courts in the Fourth Circuit have applied a somewhat more
lenient standard to Rule 55(c) motions than to Rule 60(b)
motions.  See Palmetto Fed. Savings Bank of South Carolina v.
Indus. Valley Title Ins. Co., 756 F. Supp. 925, 931 (D.S.C.
1991) ("[R]espect for the finality of judgment dictates that a
heavier burden be borne by the defaulting party who is
attempting to set aside a default judgment than that which must
be borne by a party which is merely in default, but which has
not had judgment entered."); Broglie v. Mackay-Smith, 75 F.R.D.
739, 742 (W.D. Va. 1977) (opining that, in contrast to the "more
rigorous standards" of Rule 60(b), "[w]hen the issue is one of

13

whether to set aside an entry of default so that the 'good cause' standard of Rule 55(c) is applicable, it is not absolutely necessary that the neglect or oversight offered as a reason for the delay in filing a responsive pleading be excusable").

Although it has not specifically defined "good cause" in the Rule 55(c) context, the Fourth Circuit has noted a number of factors for district courts to consider in deciding whether to set aside default entries, including: whether the defendant moving to set aside default acted with reasonable promptness; whether the plaintiff will be substantially prejudiced if the default is set aside; whether the defendant has a meritorious defense; and the availability of less drastic measures than entry of default.  See Consol. Masonry & Fireproofing, Inc. v Wagman Const. Corp., 383 F.2d 249, 251 (4th Cir. 1967); United States v. Moradi, 673 F.2d 725, 727-28 (4th Cir. 1982); Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953 (4th Cir.1987).  The court must also consider as a factor of particular importance the personal responsibility of the defaulting party, as contrasted to any fault of counsel.  Lolatchy 816 F.2d at 953; Moradi, 673 F.2d at 728 ("justice also demands that a blameless party not be disadvantaged by the errors or neglect of his attorney").

Furthermore, the disposition of motions made under Rule 55(c) "is a matter which lies largely within the discretion of the trial judge." <u>Consol. Masonry</u>, 383 F.2d at 251.  In determining whether to set aside an entry of default, the Court must liberally construe Rule 55(c) "in order to provide relief from the onerous consequences of defaults and default judgments." <u>Tolson v. Hodge</u>, 411 F.2d 123, 130 (4th Cir. 1969). Accordingly, "any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." <u>Id.</u>  "[T]he extreme sanction of judgment by default is reserved only for cases where the party's noncompliance represents bad faith or a complete disregard for the mandates of procedure and the authority of the trial court." <u>Mobil Oil Co. De Venez. v. Parada Jimenez</u>, 989 F.2d 494, 1993 WL 61863, at *3 (4th Cir. 1993) (unpublished table decision).

Here, there is no question that Defendants acted with reasonable promptness to set aside the default.  The Clerk of the Court entered the default on January 7, 2010.  Defendants filed their opposition to Plaintiff's motion for entry of default judgment on January 14, 2010, and their motion to set aside on January 21, 2010.  Courts have allowed cases to be heard on their merits when the defaulted party delayed far longer to move to set aside the default.  <u>See</u>, <u>e.g.</u>, <u>Lolatchy,</u>

816 F.2d at 952-54 (allowing case to be heard on merits although moving party delayed ten months before filing its motion to set aside default); Wainwright's Vacations, LLC v. Pan American Airways Corp., 130 F. Supp. 2d 712 (D. Md. 2001) (concluding that moving to vacate default a little more than one month after entry of default was acting with reasonable promptness); Vick v. Wong, 263 F.R.D. 325 (E.D. Va. 2009) (finding reasonable promptness factor weighed in favor of set aside where moving party did nothing for more than two months after default was entered, but responded to the motion for entry of default judgment within a few weeks).  It also seems clear that the initial error that caused the delay was that of counsel, not Defendants.

The Court also finds that the lack of prejudice to Plaintiff weighs in favor of setting aside the default.  "To determine if the non-defaulting party was prejudiced, courts examine whether the delay [caused by the default]: (1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud." Vick, 263 F.R.D. at 330 (internal quotations omitted).  "The first two factors are given the most weight, and delay and inconvenience

16

alone are insufficient to cause prejudice." Id.  Plaintiff has made no substantial argument that her ability to prosecute this action was prejudiced by Defendants' brief delay.

The last major factor for the Court to consider is whether Defendants have alleged a meritorious defense.  "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which if believed, would permit either the Court or the jury to find for the defaulting party." Moradi, 673 at 727.  The underlying concern is "'whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default.'" Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988) (quoting 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2697, p. 531).  The merits of Defendants' proffered defenses will be discussed below in connection with Defendants' Motion to Dismiss.  While the Court concludes, as set forth below, that Defendants' arguments are insufficient to warrant dismissal of all of Plaintiff's claims at this time, they at least support the possibility of a successful defense.

While the Court certainly cannot commend Defendant's counsel's dilatory conduct, it concludes that the default should be set aside.

## III. MOTION TO DISMISS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Detailed factual allegations" are not required, but allegations must be more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action[.]" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

### B. Res Judicata and Exhaustion of Administrative Remedies

In addition to challenging each of Plaintiff's claims on
the ground that the allegations in the Complaint fail to
establish the requisite elements, Defendants also raise two
preliminary challenges.  First, Defendants assert that Plaintiff
failed to exhaust her administrative remedies before filing
suit.  This issue was briefly raised in a footnote in
Defendants' motion to dismiss, Mot. at 5 n.1, but was elaborated
upon in the reply.  Reply at 2-3.  Second, in an argument raised
only in their reply memorandum, Defendants argue that
Plaintiff's claims are barred by the doctrine of res judicata.[10]

Plaintiff's claims are clearly not barred by res judicata.
Although Plaintiff mentions in her Complaint conduct that was
the subject of previous litigation, she makes clear that these
allegations are not the basis of her current claims.  Her
current claims are based solely on events that occurred after
the filing of the two previous suits in this Court.  In their
reply memorandum, Defendants concede that claims based upon the
denial of her leave applications in November 2008 and again in
August 2009 were "not the basis of final judgments" in the
previous suits.  Reply at 2.

---

[10] Defendants' injection of their res judicata argument and
elaboration of the exhaustion argument in their reply are some
of the grounds upon which Plaintiff asserts a right to file a
surreply.  The Court agrees that a surreply is necessary to
provide Plaintiff adequate opportunity to respond to matters
raised for the first time in the reply and will grant
Plaintiff's motion for leave to file her surreply.

Essentially conceding that claims based upon these two leave denials are not barred by res judicata, Defendants next argue that Plaintiff's claims are barred by a failure to exhaust administrative remedies, at least as to claims based upon the 2009 denial of requested leave.  Id. at 2-3.  Defendants reason that, because Plaintiff was issued her last right to sue letter on August 3, 2009, and this last leave application and denial occurred after that date, claims based upon that denial are not exhausted.

Plaintiff's claims are not barred by a failure to exhaust administrative remedies.  First, there is no exhaustion requirement to bringing a FMLA claim and thus, Plaintiff can go forward with her claims in Counts III and IV without exhaustion. Second, as to Plaintiff's Title VII discrimination claim in Count II, Plaintiff exhausted that claim by the filing of the July 22, 2009, EEOC charge, at least to the extent the claim is based upon the November 2008 denial of leave, and Defendants make no argument to the contrary.[11]

Finally, as to Plaintiff's Title VII retaliation claim in Count I, the Court concludes that Plaintiff was not required to

---

[11] Because a Title VII discrimination claim may encompass only the "discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge," King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir. 1976), the scope of Plaintiff discrimination claim is limited to events that occurred prior to the August 6, 2009, issuance of the last right-to-sue letter.

file a new EEOC charge encompassing events that occurred after her receipt of the last right-to-sue letter in order to bring this claim.  The Fourth Circuit has long recognized that there is an exception to the exhaustion requirement for retaliation claims that arise under certain circumstances.  See Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992).  Just last year, the Fourth Circuit clarified that a "retaliation claim arising after issuance of [a] right-to-sue letter does not require filing of [a] new charge 'so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency.'"  Jones v. Calvert Group, Inc., 551 F.3d 297, 303 (4th Cir. 2009) (quoting Clockedile v. New Hampshire Dep't of Corr., 245 F.3d 1, 6 (1st Cir. 2001)).  Here, Plaintiff's claim that she has been retaliated against from August 2009 to the present for filing her previous charges with the EEOC and complaints in this Court is clearly related to her July 22, 2009, charge of discrimination and retaliation.  See Jones, 551 F.3d at 304 (opining that alleged retaliatory termination "was merely the predictable culmination of [the employer's] alleged retaliatory conduct, and, accordingly," concluding that the claim of retaliatory termination was reasonably related to previous retaliation charge).

Relying on the just recently released unreported decision of the Fourth Circuit in Mezu II, in which the court held that

Plaintiff's previous retaliation claim was properly dismissed on exhaustion grounds, Defendants argue that the retaliation claim in this action must be dismissed as well on the same ground. Some language in the Fourth Circuit's opinion would appear to support their position.  Quoting <u>Nealon</u>, the court summarized the retaliation exception to Title VII's exhaustion requirement as follows: "a Title VII plaintiff may raise a retaliation claim for the first time in federal court without exhausting her administrative remedies if the discrimination complained of is 'like or related to allegations contained in the charge and growing out of such allegations <u>during the pendency of the case before the Commission</u>.'"  <u>Mezu II</u>, slip op. at 9 (quoting <u>Nealon</u>, 958 F.2d at 590, emphasis added by this Court).  The Fourth Circuit in <u>Jones</u>, however, rejecting a similar argument based on this language from <u>Nealon</u>, held that the new act of retaliation complained of did not have to occur while the previous charge was pending before the EEOC in order to be "related to" that previous charge.  "Regardless of whether [the employer] presents persuasive arguments that the rule we adopted in <u>Nealon</u> <u>should</u> have included a pendency requirement, the language of the opinion is clear that the rule we actually adopted in fact included no such requirement." <u>Jones</u>, 551 F.3d at 302 (emphasis in original).

Turning to the actual holding of the Fourth Circuit in Mezu II, the court concluded that the retaliation claim had to be dismissed because Plaintiff "had no claims properly before the court to which she could attach her retaliation claims." Slip Op. at 9. As noted above, this Court found in Mezu II that Plaintiff's failure to promote claim that was the subject of her second EEOC charge was barred in this Court because Plaintiff failed to file the EEOC charge within the requisite 300 days of learning that her promotion was denied. Because that claim was barred, there was no properly exhausted claim pending in this Court to which her retaliation claim could "relate back." In this third suit, in contrast, there is a properly exhausted claim to which Plaintiff's post-right-to-sue retaliation claim can relate back.

With those preliminary issues resolved, the Court turns to Defendants' challenges to the sufficiency of Plaintiff's allegations to support each of her claims.

## C. Title VII Hostile Environment Claim

As Judge Motz stated in Mezu, "'[t]o establish a hostile work environment claim, Mezu must show that: (1) the harassment was unwelcome; (2) the harassment was based on her national origin[, race,] or gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for

imposing liability on the employer.'"  Mezu I, 264 F. Supp. 2d
at 295 (quoting Causey v. Balog, 162 F.3d 795, 801 (4th Cir.
1998)).  "'To determine whether alleged harassment constitutes a
hostile work environment, the court looks to all the surrounding
circumstances including '(1) the frequency of the discriminatory
conduct; (2) its severity; (3) whether it is physically
threatening or humiliating or a mere offensive utterance; and
(4) whether it unreasonably interferes with [the] employee's
work performance.'"  Id. at 295-96 (quoting Talley v. Farrell,
156 F. Supp. 2d 534, 541 (D. Md. 2001)).

The Court finds that Plaintiff's allegations offered to
support her current hostile environment claim are of the same
ilk as those that Judge Motz found to be insufficiently "severe
or pervasive" to constitute a hostile work environment.[12]  Her
allegations related to her 2008 request for bereavement leave
are that she was initially given the wrong form which resulted
in the temporary denial of her request, but she does not allege
that she was ultimately denied the bereavement leave.  Many of
her other allegations relevant to the discrimination claim she
exhausted before the EEOC, e.g., that she was subjected to
heightened scrutiny, questioned about absences, and denied the

---

[12] As explained above, the exhaustion requirement limits
Plaintiff's discrimination claim to those events that occurred
prior to the issuance of the last right-to-sue letter.  See,
supra, n. 10.

opportunity to teach a particular class, are identical to those considered by Judge Motz.  See supra, n. 2 (quoting 264 F. Supp. 2d at 296).  Judge Motz dismissed her hostile environment claim despite her allegation that "she suffered incessant and unrelenting harassment from Dr. Hubbard" and the Fourth Circuit agreed that Plaintiff failed to allege any specific acts of harassment that were sufficiently severe or pervasive to alter the conditions of her employment.  75 Fed. Appx. at 913.

While Plaintiff's failure to allege sufficiently severe and pervasive conduct alone is fatal to this claim, the Court also notes that Plaintiff has offered little to support the conclusion that Defendants' conduct towards her was based on her race, gender, or national origin.  The Complaint is devoid of specific allegations related to sex or race.  In fact, the two members of the faculty that Plaintiff identifies by name as receiving more favorable treatment than her are both women.  See Compl. ¶ 30 (alleging that, unlike Plaintiff, these two women were able to retain their personal offices during their sabbaticals).  As to discrimination based on national origin, Plaintiff does assert that Hubbard had "strong antipathy and bias against [Plaintiff's] Nigerian origin." Id. ¶ 14.  The only allegation that he ever expressed that antipathy, however, is Plaintiff's allegation that Hubbard "made repeated derogatory remarks about Nigeria[n] academics." Id. ¶ 16.  There are no

25

allegations of the sort of offensive and humiliating discriminatory comments that typically support a hostile environment claim. See, e.g., E.E.O.C. v. Sunbelt Rentals, Inc. 521 F.3d 306, 316-17 (4th Cir. 2008) (religious discrimination claim was established by allegations that plaintiff was subjected to "repeated comments that disparaged both him and his faith" and "anti-Muslim crudities").

## D. Retaliation Claims

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) her employer took an action against her which a reasonable employee would find materially adverse; and (3) the employer took the materially adverse action because of the protected activity. See, Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67-68 (2006); Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). A plaintiff cannot prove causation without showing that the decisionmaker actually had knowledge of the protected activity at the time the decisionmaker decided to take the adverse action. See, e.g., Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001); Gibson v. Old Town Trolley Tours of Wash., D.C. Inc., 160 F.3d 177, 181-82 (4th Cir. 1998) ("Knowledge is necessary to establish causation...."). The prima facie case for a

retaliation claim under the FMLA is similar.  See Wright v.
Southwest Airlines, 319 Fed. App'x 232, 233 (4th Cir. 2009).

Defendants' arguments to dismiss Plaintiff's retaliation
claims fall wide of the mark.  First, they argue that the claims
must fail because Plaintiff "has not alleged any facts to show
that the defendants were even aware that she filed an EEOC
charge on July 10, 2009."  Mot. to Dismiss at 7.  Of course,
Plaintiff is not alleging that Defendants retaliated against her
solely for filing this third EEOC charge.  Plaintiff had filed
two previous charges and two civil actions and there is no
dispute that Defendants were well aware of those charges. and
lawsuits.  The filing of those charges and suit is protected
activity under Title VII.  Furthermore, her 2009 request for
FMLA leave constituted protected activity under the FMLA and
again, Defendants were well aware of that request.

Next, Defendants move to dismiss these claims by applying
the incorrect standard as to what constitutes an "adverse
action" for purposes of establishing a retaliation claim.  See
Mot. to Dismiss at 8 (citing Mezu I, 264 F. Supp. 2d at 296,
which discusses what constitutes a hostile work environment, not
what constitutes an adverse action for purposes of a retaliation
claim, and Carter v. Bell, 33 F.3d 450, 461 (4th Cir. 1994),
which also give the standard for finding a hostile work
environment).  Defendants contend that, because Plaintiff did

27

not allege that she suffered a "disciplinary action," she cannot prevail on her retaliation claim.[13]

In Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), the United States Supreme Court expanded the class of actions that may constitute "adverse action" under Title VII's retaliation provision.  Specifically, Burlington held that a plaintiff need not show "an adverse effect on the 'terms, conditions, or benefits' of employment" to support a retaliation claim.  Burlington, 548 U.S. at 60, 64.  Rather, a court may find retaliation if the plaintiff shows that a reasonable employee would have the found the challenged action "materially adverse," or likely to "dissuade a reasonable worker from making or supporting a charge of discrimination."  Id. at 57; see also, Bosse v. Baltimore Co., --- F. Supp. 2d ---, Civ. No. PWG-09-050, 2010 WL 816633 (D. Md. March 10, 2010) (applying Burlington standard to FMLA retaliation claim).

Given this broader definition of what can be considered an adverse action, and given that Plaintiff's retaliation claim is not limited to events that occurred prior to the issuance of the most recent right-to-sue letter, there is no difficulty in finding that Plaintiff has stated viable retaliation claims. Plaintiff alleges that she was threatened with termination, was

---

[13] In their opposition to Plaintiff's motion for leave to file a surreply, Defendants acknowledge that they initially applied the wrong standard.  Opp. to Mot. to File Surreply at 4.

not paid at all for several months, risked losing her health insurance, and suffered other serious repercussions from the lack of any income.  Certainly, the apprehension of experiencing this treatment could dissuade a reasonable employee from making or supporting a charge of discrimination or asserting a right under the FMLA.[14]

Finally, the Court concludes that the temporal proximity between the retaliatory actions of which she complains and her most recent Title VII suit and FMLA request is sufficient to satisfy the third element (causation) of the prima facie case. The appeal of Mezu II was still pending when all of the alleged adverse actions were taken, as was the decision on Plaintiff's FMLA request.  See Geist v. Gill/Kardash P'ship, -- F. Supp. 2d --, Civ. No. CCB-08-183, 2009 WL 4342519 at *6 (holding that "close temporal proximity . . . alone is enough to show a prima facie case of retaliation under Title VII"); see also, Glunt v. GES Exposition Servs., Inc., 123 F. Supp. 2d 847, 871 (D. Md. 2000) ("[t]emporal proximity between the employer's adverse employment action and the employee's exercise of her rights

---

[14] The Court is aware that some of these allegations are beyond the scope of the Complaint as it now stands.  The Court will deny the motion to dismiss, but also instructs Plaintiff to supplement the Complaint to set out these allegations related to the most recent events.  See Fed. R. Civ. P. 15(d).

under the FMLA may reasonably support an inference that the action was taken in violation of the FMLA").[15]

## E. FMLA Interference Claim

Section 2615(a)(1) of the FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by [the Act]." 29 U.S.C. § 2615(a)(1).  To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled.  Rodriquez v. Smithfield Packing Co., 545 F. Supp. 2d 508, 516 (D. Md. 2008).

---

[15] The Court will, however, dismiss the Title VII retaliation claim against the individual defendants.  It is now well established that Title VII violations are actionable against employers only.  Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998).

The Court will also dismiss the FMLA claims against the individual defendants.  Although there is no controlling authority on this point and there remains some split in authority, the more recent and better reasoned cases have held that public employees cannot be held liable in their individual capacities for violations of the FMLA.  See Sadowski v. U.S. Postal Serv., 643 F. Supp. 2d 749, 757 (D. Md. 2009); Bosse, 2010 WL 816633 at *5 (following Sandowski).

At least as to the 2009 request for leave to take care of her daughter, Defendants make no substantive argument that the Complaint does not satisfy these elements.[16]   The only challenge that Defendants make to Plaintiff's FMLA interference claim is their contention that, by giving her paid sick leave for the period that she had applied for FMLA leave, Plaintiff received no lesser benefit than had she been granted FMLA leave.   Reply at 7-8; Opp'n to Mot. for Prelim. Inj. at 7.

The Court is going to deny Defendants' motion to dismiss as to this claim.   The Complaint clearly states sufficient allegations to establish a violation of the FMLA.   See Compl. ¶¶ 86-90.   Defendants' proffered defense relies upon evidence that is outside of the Complaint and that is challenged by evidence submitted by Plaintiff.   Thus, even were the Court to convert this to a motion for summary judgment, there would remain a genuine dispute of material fact as to whether Plaintiff has really been put in the same position.   Given the evidence in the record, the Court would be hard-pressed to reach the conclusion

---

[16] Defendants attack a claim never made by Plaintiff when they argue that Plaintiff was not entitled to FMLA leave to attend her mother's funeral.   According to the Complaint, it was Defendants, not Plaintiff, that identified the wrong form for Plaintiff to complete when she was requesting leave.   The Complaint makes it clear that Plaintiff is alleging that she was entitled to FMLA for the period she sought to assist her daughter following brain surgery.   Compl. ¶ 88.

that Plaintiff has been placed in a position equal to that in
which she would have been had MSU timely granted her FMLA leave.

## IV. MOTION FOR PRELIMINARY INJUNCTION

The motion for preliminary injunction, which was filed at a
time when Plaintiff was receiving no pay from MSU, sought two
main types of relief.  First, Plaintiff sought an order
requiring MSU to commence immediately the payment of her salary
and benefits.  Second, Plaintiff requested that MSU allow her to
teach a graduate level class that is being taught this semester
by one of Plaintiff's colleagues.

The Court will deny the motion.  While Plaintiff contests
the claim that MSU has fully reimbursed her for the salary and
benefits she was denied before MSU put her back on the payroll,
she makes no claim that MSU is not currently providing, in full,
the salary and benefits to which she is entitled.  Thus, the
relief she sought in her preliminary injunction motion is
unnecessary.  Should it happen, as Plaintiff fears, that MSU
takes her back off of the payroll, she can certainly renew her
motion.  As for the request that the Court order one professor
to stop teaching a class so that Plaintiff can take over, the
Court finds this to be an inappropriate objective for injunctive
relief.  While Plaintiff may lament the loss of the opportunity
to teach this class this semester, that lament is not the kind
of irreparable injury that would justify an injunction.

## V. CONCLUSION

For all the above stated reasons the default against Defendants will be set aside; the motion to dismiss the Complaint will be denied, except as it relates to Plaintiff's Title VII discrimination claim (Count II) and the claims against the individual defendants; and Plaintiff's motion for preliminary injunction will be denied.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: March 18, 2010