# EXHIBIT A – PLAINTIFF'S JULY 26, 2010 MOTION TO COMPEL AND MEMORANDUM IN SUPPORT OF THE MOTION

Case 1:09-cv-02855-WMN Document 54-2 Filed 08/13/10 Page 2 of 24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROSE URE MEZU              :
       Plaintiff,         :
                              :
      v.                 :    Civil Action No. WMN-09-2855
                              :
MORGAN STATE UNIVERSITY,    :
       and                     :
ARMADA  W. GRANT,          :
in her personal capacity and        :
as Director, Human Resources/Payroll for   :
Morgan State University,         :
       and                     :
DOLAN HUBBARD,           :
 in his personal capacity and       :
as Chair,  Department of English     :
and Language Arts,           :
Morgan State University,         :
        Defendants.       :

## <u>PLAINTIFF'S MOTION TO COMPEL</u>

As set forth in the accompanying memorandum of law, plaintiff moves this Court under Federal Rules of Procedure 37 to compel defendants to fully answer interrogatories 3-8, 11-13, 19, 21 and 25, and to immediately produce all documents responsive to plaintiff's requests for production of documents, which documents should be governed by the five year time limitation plaintiff requested.  Further, the claims of privilege defendants assert should be denied if based on Md. Code State Government § 10-616(i), and any other claims of privilege must be supported by use of a completed privilege log.

                        Respectfully submitted,

Dated: July 26, 2010                    <u>/S/ C. Valerie Ibe, Esq.</u>

Law Offices of C. Valerie Ibe,

A  Professional L aw Corporation

23614 Nadir Street

West Hills, CA 91304
Telephone: 818-346-8777
Email:Kancvi@aol.com
Bar ID: 94234
Counsel for Plaintiff, Rose Ure Mezu


/S/ John M. Singleton, Esq.
Singleton Law Group
400 Redland Court, Suite 107
Telephone: 410-902-0073
Fax: 410-902-7372
Email:jmsingleton@sgt-law.com
Bar ID: 02275
Counsel for Plaintiff, Rose Ure Mezu

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ROSE URE MEZU | : |
|      Plaintiff, | : |
| | : |
|   v. | :   Civil Action No. WMN-09-2855 |
| | : |
| MORGAN STATE UNIVERSITY, | : |
|     and | : |
| ARMADA W. GRANT, | : |
| in her personal capacity and | : |
| as Director, Human Resources/Payroll for | : |
| Morgan State University, | : |
|     and | : |
| DOLAN HUBBARD, | : |
| in his personal capacity and | : |
| as Chair, Department of English | : |
| and Language Arts, | : |
| Morgan State University, | : |
|     Defendants. | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO COMPEL**

To date, despite the passage of months since plaintiff propounded discovery and despite repeated attempts to discuss defendants' recalcitrance with defendants' counsel, defendants still have not answered many of the interrogatories. Moreover, defendants have refused to produce any documents at all; and will only promise that, some unspecified day in the future, they may produce some small subset of the documents requested. Repeated attempts to have defendants comply with their responsibilities voluntarily have proven fruitless. Accordingly, plaintiff has no recourse but to seek this Honorable Court's assistance.

1

## STATEMENT OF FACTS

Plaintiff's complaint alleges that her employer, defendant Morgan State University, interfered with her rights under the Family and Medical Leave Act (FMLA), retaliated against her for asserting her FMLA rights, and also retaliated against her because of her earlier attempts to assert her rights under Title VII through the filing of charges with the EEOC.

Plaintiff served interrogatories and requests for production of documents on May 17 and May 19, 2010.  (See Exhibit 1, a set of the discovery requests). Accordingly, the responses were due on June 17 and June 19, respectively.  On June 15, 2010, counsel for defendants requested an extension of time in which to respond.  Plaintiff's counsel agreed to an extension until June 29, 2010.

In the meantime, plaintiff's counsel traveled from California to Maryland to participate in a mediation which took place on June 23, 2010.  Therefore, plaintiff's counsel was in Maryland and could have reviewed documents at Morgan State during that time, which was after the initial due date for responses to the document requests.

Unfortunately, on June 29, 2010, Morgan State did not fully respond.  Instead, Morgan State emailed unsigned interrogatory answers, and responses to document requests without any actual documents attached.  Many of the answers were incomplete, and although no documents actually were produced, the written responses made it clear that defendant did not intend to produce many, perhaps most, of the documents requested.  (See Exhibit 2, a set of defendants' discovery responses).  The nature of the deficiencies will be spelled out below.

After an exchange of emails and correspondence, counsels conferred by telephone on July 14, 2010.  Unfortunately, nothing was resolved.  Plaintiff's counsel then followed that conference with an email, dated July 15, 2010, expressing counsel's continuing concerns.  (See Exhibit 3, a copy of that email.)  Defendants' counsel replied by letter of the same date, reiterating the objections made before.  (See Exhibit 4, a copy of that letter).  In return, plaintiff's counsel wrote a final letter dated July 19,

2

Case 1:09-cv-02855-WMN   Document 45-1   Filed 07/26/10   Page 3 of 21

2010, pleading for compliance with the rules. (See Exhibit 5, a copy of that letter). In response, plaintiff's counsel received an email that defendants' counsel was not going to take any actions, even to respond to the letter, until no earlier than July 26, 2010.(See Exhibit 6, a copy of the email). At that point, it became imperative that this motion to compel be filed, as the thirty days from the date responses are due, the time in which under Local Rule 104 such a motion is to be filed, will soon expire.

## ARGUMENT

In examining defendants' resistance to discovery, the Court must always bear in mind the relevance of evidence for discovery purposes is viewed more liberally than relevance for evidentiary purposes. *United Oil Co., Inc. v. Parts Associates, Inc.*, 227 F.R.D. 404 (D. Md. 2005). "In a civil case, by contrast, a party is entitled as a general matter to discovery of any information sought if it appears "reasonably calculated to lead to the discovery of admissible evidence." *Degan v. United States*, 517 U.S. 820, 825-826 (1996). Thus, discovery is not limited to issues raised by the pleadings or even the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits; discovery requests may be deemed relevant if there is any possibility that the information may be relevant as to the general subject matter of the action. *National Credit Union Admin. v. First Union Capital Markets Corp.*, 189 F.R.D. 158 (D. Md. 1999).

In particular, broad discovery is necessary in job discrimination actions because incidents that are meaningless in isolation might show discrimination if they are placed in the context of the employer's overall employment policies. *Banks v. Seaboard Coast Line R. Co.*, 4 Fair Empl. Prac. Cas. (BNA) 609, 4 Empl. Prac. Dec. (CCH) ¶7512, 1971 WL 173 (N.D. Ga. 1971). A Title VII plaintiff must be allowed to exercise extensive discovery to prove her case, *Burks v. Oklahoma Pub. Co.*, 81 F.3d 975 (10th Cir. 1996), and the imposition of unnecessary limitations on discovery is especially to be avoided in Title VII cases. *Miles v. Boeing Co.*, 154 F.R.D. 117 (E.D. Pa. 1994).

3

Case 1:09-cv-02855-WMN Document 45-1 Filed 07/26/10 Page 4 of 21

## I. Defendants' Improperly Limit the Scope of Documents They Will Produce Someday

First and foremost, it is necessary to address defendants' document production; or rather, the lack thereof. To date, defendants have produced no documents at all, as already noted, doing nothing more than promising to someday produce some ill-defined portion of what was requested. Some documents, in fact most documents, that were requested, defendants refuse to produce at all.

### A. Defendants' Assertions of *Res Judicata* Are Misplaced

In several document requests, plaintiff sought documents pertaining to relevant topics in defendants' possession, and limited the time frame for these requests to only the past five years. This limitation is despite the fact that Dr. Mezu's own history of difficulty with Morgan State extends back much longer than that (this Court's opinion of January 14, 2010 noted it was a "ten year" history, on page 1 of that opinion) and of course that history is relevant to the current claims of retaliation by providing context for the claims and motivation for the defendants' actions. Despite the limited time frame sought, defendants have objected even to that time frame. They state that if and when they produce documents, they will only produce documents from after 2007.[1] (Exhibit 2). As explained in a telephonic conference (see Exhibit 3) and as elaborated in a letter (see Exhibit 4), defendants' rationale for refusing to comply with their obligation within even the limited time frame plaintiff requested was an assertion that Dr. Mezu's claims in the "prior case in 2007 are *res judicata*." (Exhibits 3 and 4). This assertion suggests that defendants have confused what claims may or may not be brought and the very different question of what facts and events might be relevant to the claims currently before this Court.

Whatever claims were or were not resolved in earlier cases, however, has no relevance to what

---

1 Specifically, response to requests for production 1, 6, 8, 10, 11, 12, and 20. The actual documents produced to other requests may also, *sub silientio*, adopt this three year restriction.

4

Case 1:09-cv-02855-WMN   Document 45-1   Filed 07/26/10   Page 5 of 21

is discoverable.  *Res judicata* may or may not bar certain claims that once were brought in earlier cases, but it does not and cannot limit discovery into the history of events that underlie the very active claims of retaliation in this case.  After all, retaliation is itself a response to earlier events.  There is no legal basis for drawing an artificial line behind which to hide the history to which Morgan State and its administration was responding.  As already stated in a written opinion in this case, there is a ten year history of difficulties and discrimination here.  Moreover, as this Court already has recognized in that same opinion, ""Plaintiff has filed two previous discrimination suits in this Court, Civil No. JFM-02-3713 and Civil No. WDQ-08-1867, and alleges she has suffered further adverse employment actions in retaliation for having filed those suits." (Jan. 14, 2010 opinion at 1).  That history is both relevant and discoverable, and indeed probably admissible, in litigating the current claims, including retaliation.  Motive is always relevant, and history determines motive. Thus, Morgan State has made the error of thinking that if certain legal claims are barred, then facts that might have been relevant to those claims are not discoverable even though those fact are also relevant to different, currently active claims.

After all, one of the elements of any retaliation claim is that an adverse action was taken because of the employee's protected activity.  When one examines the cause of any human decision, one is inquiring into that person's motive.  If the motive for taking an adverse action is to punish a person for a protected action, that is relevant to the issues of a retaliation claim.  *Ziskie v. Mineta*,  547 F.3d 220 (4th Cir. 2008)(plaintiff in a retaliation case must show "motive of alleged perpetrator").  Current acts of retaliation can be motivated not just by one recent protected activity, such as Dr. Mezu's more recent complaints to the EEOC, but also anger at her for filing that complaint *and others before it*.  A history of tension relating to EEOC claims is always relevant to a current retaliation claim.  *See, e.g., Buckley v. Mukasey*, 538 F.3d 306 (4th Cir. 2008) where the Fourth Circuit held that, in a Title VII retaliation claim, details about an earlier, now finished class action alleging racial discrimination was not only discoverable, but admissible at trial, and reversed the trial court for refusing to admit it.  As the

5

Fourth Circuit explained, plaintiff was required to prove retaliatory animus, and had to be allowed to do so by showing "that the pendency of *Segar* and the long history of its burden on DEA weighed heavily on the minds of the principal decision-makers, and that, ultimately, those decision-makers failed to promote Buckley because of her involvement in the litigation." *Id*. at 318.  Obviously, if it is reversible error to exclude such evidence, it must be discoverable.  Therefore, defendants' assertions of "*res judicata*" not only are misplaced but interfere with proper discovery.

> **B.**      **Defendants' Assertion of the Public Information Act is Misplaced**

Defendants, casting a broad brush, characterize almost every document requested as privileged. The privilege on which they rely, over and over, is the personnel files exception in the state Public Information Act, found at Md. Code State Government § 10-616(i).   That assertion of privilege is off the mark, however, for several reasons.

First, it is important to note that section 10-616, of which subsection (i) is a part, is codified as part of a set of exceptions to the larger requirement of public access to public records, Md. Code State Government, Title 10 "Government Procedures," Part III, "Access to Public Records," (Sections 10-611 to 10-630), bearing the short title, Public Information Act.  Section 10-616 pertains to required denials of applications to inspect public records, in a procedure set out at section 10-614.   The purpose of this act is to effectuate the policy that "All persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees."  Md. Code State Government § 10-612(a).  In other words, Morgan State is relying on a statute that regulates general public access to government records for any and all purposes; but this lawsuit is not a citizen's request for access to public records but a litigant's request for discovery of documents relevant to her claim.  There is nothing in section 10-616 that has anything to say about what is or is not discovery during litigation, especially federal litigation.  It has long been held that this Act does not prohibit disclosure for use in a judicial proceeding as part of discovery. *Superintendent, Maryland State Police v.*

6

*Henschen*, 369 A.2d 558, 279 Md. 468 (1967).   See also *Massey v. Galley*, 392 Md. 634, 647 898 A.2d 951, 958 (2006) stating that, "[t]his Court has frequently emphasized the distinction between "any person's" right to bring an action under the Public Information Act to inspect public records and an aggrieved party's administrative or judicial action against government officials or others based upon a complaint or grievance against the defendants."

Subsection (i), on which defendants rely, states " Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information."  Even if subsection (i) had any applicability to discoverability in a federal discrimination and FMLA action, defendants' assertions of this privilege goes well beyond what happens to be in a personnel file.

The requests for documents to which defendants refuse wholesale to respond do not refer to "personnel files."  In point of fact, the requests extend well beyond personnel files.  In a case about Morgan State's improper denial of FMLA leave, Morgan State has claimed documents pertaining to its treatment of such leave requests-- showing both whether it treated Dr. Mezu differentially or whether it mishandles all such requests-- are not relevant and claims they are all privileged.  These documents are not simply found in personnel files, however, even if those files were not discoverable, and are highly relevant.  There are any number of ways to handle legitimate confidentiality issues, including redacting employee's names and confidentiality orders.  The same observations about relevance, discoverability, and confidentiality can be made about the very closely related issue of how Morgan State has disciplined other employees with claimed improper absences.

Similarly, because Dr. Mezu has claimed that part of the pattern of discriminatory efforts against her that led to the improper handling of her FMLA leave request has been a differential standard of monitoring her attendance, these documents are clearly relevant and should be produced.  Again, confidentiality can of course be protected, and plaintiff will agree to a proper confidentiality order.

7

Also, Dr. Mezu was not paid for months after she came back to work.  Morgan State's defense has been that was a simple mistake, and that somehow no one at Morgan State noticed that Dr. Mezu was calling and writing in desperation because she was not getting paid.  Since Morgan State claims this was a clerical error that showed no harmful intent, it is surely relevant to produce payroll records to see if this is a common error or whether, as is likely, in fact it never happens--except to Dr. Mezu.  Again, confidentiality can be maintained by way of a proper order.

**C.     Defendants Have Refused to Produce a Privilege Log**

In any case, if defendants continue to assert broad and sweeping (and largely unexplained) claims of privilege, it is their burden to establish that privilege actually applies.    *Victor Stanley, Inc. v. Creative Pipe, Inc*.,  250 F.R.D. 251, 267 (D. Md. 2008).  To meet that burden, defendants at least needed to produce a privilege log, but they have made no effort to do so nor have they even hinted that someday they may get around to meeting that obligation.  We have asked you to comply with the requirements of a privilege log, and to at least begin to explain why so much of what was requested was "privileged."  As stated in *United States. v. Construction Products Research, Inc*., 73 F.3d 464, 473 (2d Cir. 1996), "The privilege log should identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure....." *Accord*,  *Victor Stanley, Inc. v. Creative Pipe, Inc*., 250 F.R.D. 251, 267 (D.Md. 2008).  To produce a proper log, defendants should have listed:

1. The nature of the document. e.g. letter, hand-written notes.

2. The author (s) of the document and author(s) position(attorney, president, etc.).

3. The date the document was created.

4. The names of the individuals to whom the document was addressed and their positions.

5. The names of the individuals who actually received the document and their position.

6. The name of the individual(s) who have possession of the document.

8

7. The privilege under which the document is withheld.

*See* the U.S.D.C. Md. Local Rules, Guideline 10 concerning discovery.   Defendants have not only failed to produce such a log but apparently do not plan to do so.

This privilege log also will help this Court evaluate the occasional unexplained claim of "attorney-client privilege."  Without some explanation, these occasional references to that privilege may be nothing more than boilerplate; it is not even clear what the universe of documents to which this claim is made referred.

## II.      Defendants Should Bear the Cost of Production of Documents

Defendants refuse to produce the documents until plaintiff pays for them, claiming that they need $0.25 a page.  (Exhibit 4).  Based on this claim, defendants have now gone months without producing a single piece of paper.   As has often been stated, however,   "...it is clear that, ordinarily, the presumption is that the producing party should bear the cost of responding to properly initiated discovery requests." *Thompson v. U.S. Dept. of Housing and Urban Development*, 219 F.R.D. 93, 97 (D. Md. 2003) citing *Oppenheimer Fund Inc. v. Sanders,* 437 U.S. 340, 358 (1978) (the party responding to a discovery request ordinarily bears the expense associated with doing so).  *See also Laethem Equipment Co. v. Deere & Co*., 261 F.R.D. 127, 145 (E.D.Mich. 2009)( "Under the discovery rules, the presumption is that the responding party must bear the expense of complying with discovery requests.");  *Dahl v. Bain Capital Partners, LLC*, 655 F.Supp.2d 146 148 (D. Mass. 2009)("For all discovery, including electronic discovery, the presumption is that parties must satisfy their own costs in replying to discovery requests.");  *Quinby v. WestLB AG*, 245 F.R.D. 94, 97 (S.D.N.Y. 2006)("There is presumption that responding party must bear expense of complying with discovery requests");  *D'Onofrio v. SFX Sports Group, Inc*., 254 F.R.D. 129, 134 (D.D.C. 2008)("The presumption under the Federal Rules of Civil Procedure is that the producing party bears the costs of complying with a discovery request.").

9

In demanding payment, defendants cited U.S.D.C. Md. Local Rule 104(11)(c),concerning taxation of costs (see Exhibit 4)  but did so out of context.  This rule limits what a party *may* charge if, in fact, the charge is determined to be properly placed on the recipient.  It does not address the actual decision about who bears what costs. Rather, it remains presumptively the case that the party making the production should bear the costs.

 Among the factors to evaluate before even considering ignoring the presumption and shifting the costs to plaintiff was that defendants' discovery responses were due well before the mediation but defendants sought extra time.  Had defendant complied with its normal obligations, the time for production would have been on or before the time plaintiff's counsel was in Maryland, and counsel then could have inspected the documents and made copying arrangements then and there.  Yet having failed to produce the documents then, defendants now seek to charge some unspecified amount before even producing any documents.

If there were any reason to shift the costs, $0.25 a page is much too high.  Under the District of Maryland's Guidelines for Bill of Costs, at section H., you are limited even in that situation to "the *lesser* of actual costs or the copy fee rates in the Court's schedule of fees, as established under 28 U.S.C. § 1914 and listed in the Court's website." (Emphasis supplied).  As so listed, costs for electronic documents are limited to 10 cents a page, and plaintiff has stated she would be more than willing to receive these documents in a pdf or other electronic format.

In any case, defendants have asserted no reason to ignore the general presumption that they should bear their own costs of production.

III.   **Defendants Must Fully Respond to the Interrogatories**

Defendants also have failed to fully respond to the interrogatories with which they were served months ago.  Examining the deficient answers, one by one:

**"INTERROGATORY NO. 3:**  Please set forth the Plaintiff's hire date; positions with the Defendant; pay

10

rate and/or salary in each position; time in each position; reasons for changes in positions throughout Plaintiff's employment; and supervisor's in each position.  Please set forth also the corresponding pay rate and/or salary of similarly placed non Nigerian Faculty members of equal rank during the same time and the reason for the differences if any.

**RESPONSE:**  Defendant objects to the interrogatory because it is overly broad and requests information beyond the scope of the two counts remaining in the case and is not reasonably calculated to lead to the discovery of admissible evidence relevant to the two remaining counts in the case . Moreover, the request contains more than one request. Without waiving the objection, defendant states the following information concerning plaintiff's salary:
Associate Professor, 8/17/05, salary $60,389
  Associate Professor, 8/16/06, salary $63,445
  Associate Professor, 8/15/07, salary $66,008
  Associate Professor, 8/13/08, salary $68,203
  Associate Professor, 8/12/09, salary $68,203"

The objection to the bulk of this interrogatory is another version of the claim that the very history that gave rise to the active Title VII retaliation claim here is somehow not relevant.  Again, as this Court has already stated, on January 14, 2010, ""Plaintiff has filed two previous discrimination suits in this Court, Civil No. JFM-02-3713 and Civil No. WDQ-08-1867, and alleges she has suffered further adverse employment actions in retaliation for having filed those suits."  The motive for defendants' retaliation against plaintiff must be explored.  Did they act against her only because of the most recent EEOC charge, or was part of their motive in subjecting her to adverse action that she had filed more than one such charge?  Of course these are relevant questions, and thus evidence of the broader pattern of discrimination underlying the other charges is relevant-- not to prove claims that are not in this case, but to establish motives and context for the claims that in fact are in this case (*see, e.g*., Count I of the Amended Complaint).  *See, e.g., Buckley v. Mukasey*, 538 F.3d 306, 318 (4th Cir. 2008)(in a Title VII retaliation claim  details about an earlier, now finished class action alleging racial discrimination was not only discoverable, but admissible at trial).

**"INTERROGATORY NO. 4:** Please set forth all leave taken by the Plaintiff during the time period in question, September 2005 to February 2010; the type of leave taken; the start and end dates for each leave period; whether consideration was given at the time as to whether the leave was FMLA qualifying; whether the leave was designated as FMLA qualifying leave; whether the leave was designated as non-qualifying FMLA leave; and for each such FMLA designation who participated in that designation

11

decision.  Indicate also the leave bank accumulated by the Plaintiff at the onset of each type of leave requested."

**RESPONSE:** Defendant objects to the interrogatory on the grounds that it is overly broad. Without waiving the objection, defendant responds to that part of the request concerning the leave periods in November 2008 and 2009.
Plaintiff received paid FMLA leave from March 10, 2008 to March 21, 2008.
Plaintiff requested FMLA leave for burial of parent for November 25, 2008 to December 7, 2008. Leave request was denied because FMLA leave does not apply to burial of parent, but plaintiff was allowed to take paid bereavement leave.
Plaintiff requested sick leave on August 13, 2009. She was granted sick leave for the period August 13 - August 20, 2009.
Plaintiff requested FMLA leave on August 31, 2009. She was continued on paid sick leave until November 13, 2009. Plaintiff was retroactively awarded paid sick leave for the three week period of November 13, 2009 through December 3, 2009.
For each of the leave periods, plaintiff was on paid leave because she had sufficient sick leave available to be paid."


Defendants do not provide any justification for limiting their response to only 2008 and 2009

(even their misapplied *res judicata* theory on Title VII could not possibly be meant to also apply to

FMLA-related discovery) and they failed to state the amount of plaintiff's leave bank that was

available before each leave.  Without that evidence, is it impossible to determine how much leave Dr.

Mezu had accumulated, according to Morgan State, in her leave bank.  The amount of leave

accumulated is of course highly relevant to her claim for damages.

"**INTERROGATORY NO. 5:** Please set forth all leave requested by the Plaintiff during the time period in question September 2005 to February 2010; the type of leave requested and the reasons provided for the leave by Plaintiff; to whom and how the leave was requested; the proposed start and end dates for each requested leave period; *whether the leave was granted or denied*; whether the leave was paid or unpaid; and who participated in that decision and for each such period what bank leave was available to the Plaintiff.
**RESPONSE:** Defendant objects to the interrogatory on the grounds that it is overly broad. Without waiving the objection, defendant refers to response to interrogatory no. 4."

This response, incorporating the previous answer, does not provide information about whether leave was

granted or denied at any time between 2005 and 2008.  Defendants have provided no explanation why

such information is not relevant or discoverable.


"**INTERROGATORY NO. 6:** Please set forth *all days and partial days missed* by the plaintiff for the

12

time period in question September 2005 and February 2010 and for each absence, set forth the employer's designation for the type of absence that occurred.

**RESPONSE:** Defendant objects to the interrogatory on the grounds that it is overly broad. Without waiving the objection, defendant responds to that part of the request concerning the leave periods in November 2008 and 2009 which is provided in response to interrogatory no. 4. Plaintiff designates her sick leave which is approved by the Chairperson of the English Department."

This response does not provide any information about actual recorded absences during that five year

period.

**"INTERROGATORY NO. 7:** Please set forth all reasons Morgan State University, the employer had for giving the Plaintiff FMLA Request forms which she filled out on November 18, 2008 when the Plaintiff clearly stated that she needed leave to go to Nigeria to bury her mother. Please set forth all reasons why on November 25, 2008 (after the Plaintiff had left for Nigeria) the Human Resources Director denied the Plaintiff's request for FMLA leave and asked her to apply for "sick-bereavement" leave. *Please indicate also whether her application for "sick-bereavement" leave has been to date approved or denied. Please indicate who participated in that decision, their reasons at the time for taking the adverse employment action against the plaintiff.* Please set forth all individuals (by name, position held at the time, and current position, if different) that participated in the decision making process to take the adverse employment action against the plaintiff.

**RESPONSE:** Defendant objects to the interrogatory as worded on the grounds that it asks for legal conclusions. Without waiving the objection, defendant responds that on November 19, 2008, plaintiff came to the Office of Human Resources to request a FMLA packet from Barbara Watkins who understood the plaintiff to say she (plaintiff) was ill. On November 20, 2008, plaintiff returned to the Office of Human Resources accompanied by a man, and requested another FMLA information packet. Plaintiff indicated she was going home to bury her mother, but did not indicate the FMLA form was for that reason. Human Resources as part of its normal business practice will providing the FMLA forms to any employee who asks for the form. Plaintiff received paid bereavement leave for attendance at her mother's funeral."

This response does not specifically state whether plaintiff was approved for the leave-- given the

proven history of erratic treatment of payroll matters at Morgan State (Morgan State itself has

contended in this case it is capable of "forgetting" to pay its employees for months), there is a

difference between "receiving" paid leave and having it approved in the records. Furthermore, and

more important, this interrogatory answer fails to answer the critical question of who was involved in

this decision making.

**"INTERROGATORY NO. 8:** *Is it a fact that the Plaintiff applied, on August 13, 2009, applied for leave under the Family and Medical Leave to care for her daughter for the period August 31, 2009*

13

*until October 2, 2009 and further notified in writing and in person Dr. Dolan Hubbard the Chairperson of her Department.*  Is it a fact also that it was only on September 18, 2009, more than five weeks after Dr. Mezu applied for leave that Morgan State replied that "your request for leave under the Family and Medical Leave Act for the period August 31, 2009 until October 2, 2009 is denied." *Please indicate who participated in that decision, their reasons at the time for taking the adverse employment action against the plaintiff. Please set forth all individuals (by name, position held at the time, and current position, if different) that participated in the decision making process to take the adverse employment action against the plaintiff.*

**RESPONSE:** Defendant objects to the interrogatory on the grounds that plaintiff asks for legal conclusions, and the interrogatory contains more than one request. Without waiving the objection, defendant responds that plaintiff requested and received paid sick leave for the time period August 13, 2009 - August   2009. Plaintiff then requested FMLA leave for the period August 31, 2009 until October 2, 2009. The Director of Human Resources is the final authority for the FMLA leave decisions."

Defendants avoid answering the questions in the first sentence altogether.  Does Morgan State admit Dr. Mezu requested FMLA leave on August 13, 2009?  Does Morgan State admit Dr. Mezu personally contacted Dolan Hubbard as well about this leave?  Defendants cannot pretend that in a case the centers on this very leave request these are not relevant questions.  Equally as important, just as they do in every instance when asked to identify the individuals with decision making power, defendants avoid the question.  Armada Grant may have "final authority"-- but who participated in helping make the decision over which she had "final authority?"   Again, it is clear these are relevant issues.

**"INTERROGATORY NO. 11:** Is it a fact that Morgan State University subsequently stopped the payment of Dr. Mezu's salary with effect from November 13, 2009 and failed and/or neglected to reinstate her on the payroll even after she returned to work, as scheduled, on December 4, 2009. Is it a fact that despite returning to work, Dr. Mezu did not receive any salary or benefits from the University until January 20, 2010. *Please set forth all individuals (by name, position held at the time, and current position, if different) that participated in the decision making process to take the adverse employment action against the plaintiff.*
**RESPONSE:** Defendant objects to the interrogatory on the grounds that it contains more than one request. Without waiving the objection, defendant responds that plaintiff's salary was stopped, by mistake, for the period November 13, 2009 until December 4, 2009.  Because defendant did not know that plaintiff had been unpaid from November 13 until December 4, the necessary paperwork to reactivate her salary payment was not made on December 4, 2009. Plaintiff was placed on regular pay status as soon as defendant learned of the mistake."

Again, it is clear that defendants are trying to avoid identifying who was involved in these decisions.  The

answer talks about "defendant," by which the answer means Morgan State University, as "knowing" and

14

"not knowing" certain facts.  Of course, Morgan State knows nothing; people who work for Morgan State know things.  Who knew or did not know about plaintiff's payroll status?  Who decided to ignore her requests to be paid for two months?  As always, defendants consistently try to hide who is responsible for the key actions in this dispute.  That clearly is improper.

**"INTERROGATORY NO. 12:** Is it a fact that Armada Grant is aware that Dr. Mezu is a black woman of Nigeria of Igbo ethnic origin?  Is it a fact that Armada Grant is aware that Dr. Mezu sued the University in her First Action docketed as Civil Action Number 02-CV-03713-JFM alleging harassment, wage discrimination against the university?  Is it a fact that Armada Grant is aware of the Second Lawsuit on July 18, 2008 docketed as Civil Action No.: 08-C-1867-WDQ accusing the University of retaliation, failure to promote, equal pay violations, harassment and adverse employment actions for exercising protected rights and additionally FMLA  interference and Retaliation.

**RESPONSE:** Defendant objects to the interrogatory on the grounds that it is improperly worded and contains more than one request. Without waiving the objection, defendant responds that Armada Grant (who is no longer a defendant in this case) was named as a defendant in the cases cited in the interrogatory."

Morgan State has claimed Armada Grant is a person with final authority over leave requests--in fact it so claimed in the answer to the eighth interrogatory quoted above.  This case concerns retaliation against Dr. Mezu because she is of Nigerian origin and has filed previous lawsuits about the discrimination against her.  It is inconceivable that defendants have tried to avoid answering this question-- knowledge of a plaintiff's actions for which she claimed she was made to suffer retaliation is clearly relevant and central to this lawsuit.

**"INTERROGATORY NO. 13:** Please indicate whether you have a written employee policy, employee manual, and/or an employee handbook and, *if so, state the time period that that handbook has been in existence.*  If you have written policies, employee manuals, and/or an employee handbook, *please indicate at what point you included information on an employee's entitlements and obligation under the FMLA in the above mentioned documents.*

**RESPONSE:** Defendant objects on the grounds that the interrogatory contains more than one request. Without waiving the objection, defendant responds that the University has written policies and manuals regarding leave for employees, which include information about the FMLA. Policies change and/or are amended from time to time."

This response ignores the italicized language in the interrogatories.  Even if, someday, Morgan State actually produces this document, that will not answer the questions about how long the handbook has been

Case 1:09-cv-02855-WMN   Document 54-2   Filed 08/13/10   Page 19 of 24

in existence and when the FMLA information was first included in that handbook-- which Morgan State

admits in its answer has changed over time.

**"INTERROGATORY NO. 15:** Please set forth all notices (written and verbal) that the Plaintiff provided the Human Resources Department and the employer of alleged incidences of discrimination conduct (oral, written, graphic, or physical) directed against the Plaintiff because of race, color, national origin, religion, sex, sexual orientation, age, marital status or disability and that had the purpose or reasonably foreseeable effect of creating an offensive, demeaning, intimidating, or hostile environment for that person or group of persons. For each such notice please indicate the date the employer received notice; who received the notice on behalf of the employer; the nature of the complaint.  State also whether the University addressed the issue, investigated the complaint of discrimination in accordance with laid down policy, the start date of the investigation, the end date of the investigation.   Please set forth all individuals (by name, position held at the time, and current position, if different) that participated in the investigation.

**RESPONSE:** Defendant objects to the interrogatory on the grounds that it is overly broad, requests information not reasonably calculated to lead to the discovery of admissible evidence relating to the two remaining counts in this case, and concerns claims that have been litigated in the federal courts and are res judicata. "

**"INTERROGATORY NO. 16:**  Further to Interrogatory 16, if you maintain that the Plaintiff was never discriminated against,  please list the recommendations by the individuals and the minutes of the meeting where the decision was taken; who or what committee investigated the incidents to (1) determine whether discrimination has occurred; (2) how to prevent further acts of discrimination; (3) how to restore to the Plaintiff (if found to have been discriminated against) any losses suffered as a result of the discriminatory conduct; (4) remove any material that violates this policy and/or repair any resulting damages; and (5) Prevent acts of retaliation against the Plaintiff for bringing the complaint.

**RESPONSE:** Defendant objects on the grounds that the interrogatory is overly broad, confusing and not reasonably calculated to lead to the discovery of admissible evidence related to the two remaining counts in the case. The request also improperly asks defendant to speculate "if defendant has been found to have discriminated." Without waiving the objection, defendant responds that the denial of FMLA leave was based on insufficient documentation from plaintiff, and that plaintiff has not been retaliated against.

In these responses, it appears defendants are unaware that there is a Title VII retaliation claim against them.  There are *three* counts remaining in this case, not two, as defendants assert.   The first count, which defendants appear to ignore, is a Title VII retaliation claim.  As already explained, past acts of discrimination provide context and explain motive for such a retaliation claim.  The issue is not "relitigating" old claims but establishing retaliatory animus.  *See, e.g., Buckley v. Mukasey*, 538 F.3d 306, 318 (4th Cir. 2008)(in a Title VII retaliation claim  details about an earlier, now finished class action

16

alleging racial discrimination was not only discoverable, but admissible at trial).Defendants consistently fail to grasp this well-established fact-- perhaps because they appear not to realize there is actually an active Title VII count in this case.

**"INTERROGATORY NO. 18:** Please provide reasons for and the circumstances surrounding the sack, retirement and/or resignation of the following Nigerian and African Professors from the following Departments of Morgan State University: Professor Sunday Anozie (English), Professor Patrick Bassey Williams (Public Health), Professor Sydney Onyeberechi (English), Professor Isidore Obot (Public Health), Professor Joel O. Nwagbaraocha, Prof. Charles Owusu Kwarteng (Political Science), the sack and reinstatement of Mr. Gabriel Tenabe (Office of Museums).

**RESPONSE:** Defendant objects to the interrogatory on the grounds that it is overly broad and is not reasonably calculated to lead to the discovery of admissible evidence related to the two remaining counts in this case.

**INTERROGATORY NO. 19:** How many African Professors at Morgan State University have filed lawsuits based on claims of  (1) violations of Maryland's national origin, gender and wage discrimination laws; (2) violations of the federal Equal Pay Act; (3) hostile workplace under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (2000);1 (4) due process violations; (5) equal protection violations; (6) First Amendment violations; and, (7) invasion of privacy?  How many like Dr. Charles Owusu Kwarteng were fired following the exercise of their protected rights (Karteng v Morgan State University **[CA-03-515-1-WMN]**? How many did Morgan State University "in error" remove their names from the payroll as in the case of Dr. Rose Mezu [**Civil Action No. WMN-09-2855].**

**RESPONSE:**  Defendant objects to the interrogatory on the grounds that it is overly broad and is not reasonably calculated to lead to the discovery of admissible evidence related to the two counts remaining in the case.

**INTERROGATORY NO. 25:** Please provide details about any lawsuits by Faculty member and/or staff against the University in the past five (5) years. Only include lawsuits in which the individual or group complained about promotion, retaliation, EPA, discrimination and FMLA issues. Please include the court, the case title, the case number, the type of complaint, the nationality and sex of the individual (African [specify the country], American, European, Asiatic), if known, and whether the complainant recovered or not and those who were fired or demoted for any reason after the complaint.

**RESPONSE:** Defendant objects to the interrogatory as overly broad and it is not reasonably calculated to lead to the discovery of admissible evidence related to the two remaining counts in the case."

These questions appear to have struck a nerve.  Defendants seek to suppress this information, ignoring the fact that in a Title VII retaliation claim, past discriminatory animus is always relevant.  The evidence is relevant to claims that any proffered excuse for the adverse actions against Dr. Mezu are

17

pretextual, as this evidence may establish a pattern of covering up discriminatory actions by taking retaliatory steps against persons who complain.  Again, *See, e.g., Buckley v. Mukasey*, 538 F.3d 306, 318 (4th Cir. 2008) where the Fourth Circuit held that, in a Title VII retaliation claim, details about an earlier, now finished class action alleging racial discrimination was not only discoverable, but admissible at trial, and reversed the trial court for refusing to admit it.  *See also Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1286 (11th Cir.2008) (concluding, where plaintiff alleged that employer retaliated against him for filing race discrimination charge, that co-workers' " 'me too' evidence" was admissible as "probative of the intent of Bagby Elevator to retaliate against any black employee who complained about racial slurs in the workplace"); *Hitt v. Connell,* 301 F.3d 240, 249-50 (5th Cir.2002) (where plaintiff alleged retaliation for union participation, ruling that coworkers were properly "allowed to testify that they were discharged or otherwise discriminated against because of their participation in the union," because such evidence was admissible as proof of motive); *Morris v. Wash. Metro. Area Transit Auth.,* 702 F.2d 1037, 1046 (D.C.Cir.1983) (where plaintiff asserted First Amendment retaliation claim, deeming admissible, as probative of motive, "evidence showing that the employer followed a broad practice of retaliation and responded to any protected criticism with disciplinary action").

Defendants' overall approach to responding to these interrogatories was to 1) ignore the Title VII claim in Count I, 2) pretend that evidence of discriminatory and retaliatory patterns of behavior are not relevant to Title VII claims and 3) refuse to identify actual decision makers.  None of these tactics can be justified.

18

## CONCLUSION

.        For all the reasons stated above, plaintiff respectfully moves this Honorable Court to grant this

motion to compel in its entirety, and sanction defendants for their recalcitrant behavior.

Dated: July 26, 2010                              Respectfully submitted,


/S/ C. Valerie Ibe, Esq.
Law Offices of C. Valerie Ibe,

A  Professional L aw Corporation

23614 Nadir Street

West Hills, CA 91304
Telephone: 818-346-8777
Email:Kancvi@aol.com
Bar ID: 94234
Counsel for Plaintiff, Rose Ure Mezu


/S/ John M. Singleton, Esq.
 Singleton Law Group
 400 Redland Court, Suite 107
 Telephone: 410-902-0073
 Fax: 410-902-7372
 Email:jmsingleton@sgt-law.com
 Bar ID: 02275
Counsel for Plaintiff, Rose Ure Mezu


19

Case 1:09-cv-02855-WMN   Document 54-2   Filed 08/13/10   Page 23 of 24

## <u>CERTIFICATE OF COMPLIANCE UNDER LOCAL RULE 104.7</u>

I hereby certify that the undersigned, representing plaintiff, and Sally Swann, Esquire, representing defendants, met and conferred by telephonic conference on July 14, 2010, at 8 a.m to discuss defendants' failure to produce any documents and their failure to fully respond to the interrogatories and requests for production of documents.  Despite that conference, various issues remain to be resolved by the Court:

1. Defendants' failure to produce any documents as of the date of this certificate.

2. Defendants' refusal to produce any documents until plaintiff agrees to bear the costs of production.

3. Defendants' objections to the scope of the document requests.

4. Defendants' failure to respond fully to interrogatories 3-8, 11-19, 21 and 25.

5. Defendants' refusal to provide a privilege log for claimed privilege.

<table>
<tr><td></td><td>/S/ C. Valerie Ibe, Esq.</td></tr>
<tr><td>Dated:  July 26, 2010</td><td>Law Offices of C. Valerie Ibe,</td></tr>
</table>

Dated:  July 26, 2010

/S/ C. Valerie Ibe, Esq.

Law Offices of C. Valerie Ibe,

A  Professional L aw Corporation

23614 Nadir Street

West Hills, CA 91304
Telephone: 818-346-8777
Email:Kancvi@aol.com
Bar ID: 94234
Counsel for Plaintiff, Rose Ure Mezu

20

**CERTIFICATE OF SERVICE**
**All Case Participants Are CM/ECF Participants**

I hereby certify that on July 26, 2010, I electronically filed the foregoing Motion to Compel with all the attachments with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Sally Lotz Swann    sswann@oag.state.md.us,

/S/ C. Valerie Ibe, Esq.
Law Offices of C. Valerie Ibe,

A  Professional L aw Corporation

23614 Nadir Street

West Hills, CA 91304
Telephone: 818-346-8777
Email:Kancvi@aol.com
Bar ID: 94234
Counsel for Plaintiff, Rose Ure Mezu

/S/ John M. Singleton, Esq.
 Singleton Law Group
 400 Redland Court, Suite 107
 Telephone: 410-902-0073
 Fax: 410-902-7372
 Email:jmsingleton@sgt-law.com
 Bar ID: 02275
 Counsel for Plaintiff, Rose Ure Mezu