## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROSE URE MEZU :
   Plaintiff, :
     :
 v. : Civil Action No. WMN-09-2855
     :
MORGAN STATE UNIVERSITY, :
  and :
ARMADA  W. GRANT, :
in her personal capacity and :
as Director, Human Resources/Payroll :
for Morgan State University, :
  and :
DOLAN HUBBARD, :
 in his personal capacity and :
as Chair,  Department of English :
and Language Arts, :
Morgan State University, :
   Defendants. :

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION SEEKING REVOCATION OF PLAINTIFF'S COUNSEL'S ADMISSION *PRO HAC VICE*

Defendant's actions in this case have all been somewhat extreme, and now have hit a wall of near hysteria, trying to have plaintiff's counsel's status of *pro hac vice* admission revoked, based on a number of claimed errors on the part of plaintiff's counsel.[1] This motion is a rather extreme reaction, even if defendant's claims were accurate (which, of course, they are not).  Moreover, it would also be an extremely hypocritical reaction as well for defendant to complain about plaintiff's counsel.  As the old saying goes, those who live in glass houses

---

[1] At this point, plaintiff's counsel will not burden the Court with a rehearsal of the nature of this action, set forth repeatedly already in earlier motions filed with the Court.

1

should not throw stones.

Even assuming defense counsel bears no responsibility for defendant's decision not to respond to the complaint in this action until faced with both default and a preliminary injunction, defense counsel surely must bear responsibility for objecting to the bulk of plaintiff's discovery, making legal contentions that are so poorly reasoned that it is hard to believe they were made in good faith. Failure to respond in good faith to discovery is, of course "improper conduct and disregard" for both the Local Rules and the Federal Rules of Civil Procedure.

Similarly, defense counsel engaged in "improper conduct" by promising, in early July, to produce a privilege log as required by the Local Rules, see U.S.D.C. Md. Local Rules, Guideline 10 concerning discovery, but then simply breaking that promise. It is now late September-- no privilege log for defense counsel's expansive claims of privilege has been produced.

Defense counsel "disregarded the Local Rules" to avoid ever answering plaintiff's motion to compel. The motion was served on defense counsel on July 26, 2010. Under Local Rule 104.8(a) defendant is then required to "serve a memorandum in opposition to the motion within fourteen (14) days thereafter." That meant defendant was required to respond to the motion to compel on or before Monday, August 9, 2010. Defendant failed to do so. To date, it still has not done so. It ignored the deadline of the rules. It did not obtain from the court or opposing counsel permission to do so, and have an extension of time. Thus, the motion was, by the rules, unopposed, and ready to be filed with this Court. When it was filed, defense counsel moved to strike *raising her own refusal to bother responding to the motion as the reason for*

*her motion.* Defense counsel believed that the Local Rules did not apply to her, apparently. She has argued that she could simply refuse to comply with her obligation to respond to the motion-- making any other step meant to be taken thereafter impossible[2]-- and then use her own decision to defy Local Rules as a basis for keeping the dispute from the Court.

Indeed, defense counsel consistently acts as if the Local Rules only apply to others, not to her. While protesting imaginary failings in the procedures for resolving discovery disputes under Local Rule 104, defense counsel herself attempted to avoid those very steps when she disliked plaintiff's objections to discovery requests. After plaintiff interposed some objections to producing certain documents, defense counsel could not be bothered with complying with the time-consuming procedures of Local Rule 104. Rather than serve a deficiency list on plaintiff's counsel or otherwise conferring with plaintiff's counsel about the disagreement, as required by Local Rule 104.7 and 104.8, defense counsel simply attempted to obtain those same documents by way of a deposition subpoena directed to plaintiff, ignoring entirely that there were pending objections that had not even been discussed with counsel. (See Docket Number 59).

Defense counsel also surely must be held responsible for filing motions with this Court that contain deliberate misrepresentations. That surely is "improper conduct." Defense counsel recently filed a motion for sanctions that deliberately stated in two places that plaintiff had refused to hold a conference about documents plaintiff had not yet produced-- but that motion was filed after defense counsel had already received those very documents. (Described in

---

2  How is it possible, for example, to confer about the conflicting positions taken in the motion and the response when the responding party refuses to serve a response?

Docket Number 73 at 6).   In that same motion, defense counsel deliberately sought sanctions

for plaintiffs "failure" to make expert disclosures about two physicians whom defense counsel

knew have never been retained as expert witnesses.  (Again, described in docket number 73 at

8).  Again in that same motion, defense counsel deliberately sought sanctions for plaintiff's

failure to produce "medical records"--knowing that the only records plaintiff has not produced

are records that *do not belong to plaintiff and which she has no power to produce.*  (Also

described in docket number 73 at 15).

Despite defense counsel's own repeated refusal to abide by any rule, local to this court or

in the Federal Rules of Civil Procedure, that she finds inconvenient, she lists some set of

plaintiff's own alleged insufficiencies.  Taking these in order:

### The Motion for Partial Adjudication of the Facts Under Rule 56(d)

First, defendant lists plaintiff's motion for partial summary judgment as improperly filed,

claiming it was filed in an untimely fashion-- then, although plaintiff's counsel filed a pleading

with this Court detailing the reason for that filing (Docket Number 67), defense counsel takes it

upon herself to restate plaintiff's counsel's reasoning as if this Court had no access to its own

files.  (Defendant's memorandum in support of this motion at ¶ 6(A-B)).[3]

The Court has struck that motion as untimely-- plaintiff's counsel respectfully defers to

---

3   It is odd that defendant protested about responding to that motion by, among other things, noting
    that discovery was not completed.  Based on defense counsel's deposition questions, see appendix to
    Docket Number 73, she does not intend to ever actually take any discovery on those relevant issues.
    The motion concerned the denial of plaintiff's FMLA leave request in fall of 2009; it focused on
    defendant's failure to follow virtually any of the procedures the FMLA required of it in responding
    to that leave request.  Defense counsel has taken plaintiff's deposition, and chose to largely ignore
    the entire fall of 2009.  Having had her opportunity to take discovery on the issues raised in the
    motion for partial summary judgment, defense counsel apparently had nothing she wanted to learn.
    A close reading of plaintiff's deposition suggests that defense counsel is *sub silentio* conceding that
    she will lose on all the issues raised in the motion for partial summary judgment.

the Court's ruling, of course.  It would be utterly false, however, to say that plaintiff's counsel "disregarded" Local Rule 105.2(c)-- the proof of the falsity of that claim defendant has made is in the very filing with this Court, defense counsel failed to mention--plaintiff's response to the motion to strike the motion for partial summary judgment. (Docket Number 67).  Plaintiff's counsel there presented a legal argument-- one the Court appears to have rejected, but a good faith argument-- that the Local Rule does not apply at all to motions for partial summary judgment, more properly referred to as partial summary adjudication of the facts.

Supported by the text of the Federal Rules of Civil Procedure (specifically 56(d)), learned treatises, and several prominent judicial decisions, plaintiff argued that its motion was *not a motion for summary judgment at all*-- as several courts have pointed out, "partial summary "judgment" is a misnomer; a court's order pursuant to Rule 56(d) is more accurately understood as a partial 'adjudication' of the facts."  *In re Air Crash Disaster Near Warsaw*, 979 F.Supp. 164, 167 (E.D.N.Y. 1997),  citing J Moore, 6 pt. 2 Moore's Federal Practice, ¶ 56.20[3.-1] at 56-90.  *See also Minority Police Officers Assn. of South Bend v. City of South Bend,* 721 F.2d 197, 200 (7th Cir.1983) (stating that "[t]he word 'judgment' in the term 'partial summary judgment' is a misnomer"); 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2737 at 322 (3d ed.1998).   Such an order "is not final, has no *res judicata* effect, and cannot be certified for appeal pursuant to Rule 54(b)." *In re Air Crash Disaster Near Warsaw*, 979 F.Supp. at 167, citing *Acha v. Beame,* 570 F.2d 57, 62 (2d Cir.1978).

Apparently the Court disagreed with those decisions, and those authorities.  However, a good faith legal argument, supported by case law that a rule does not apply in a particular situation is not "disregard" of the rules.  Moreover, defense counsel surely knows this-- but

pretended she never saw that argument, representing the situation to this Court as if plaintiff's counsel simply chose not to follow the Local Rule.

**The Irresponsible Speculation About Hypothetical "Discussions"**
**and Other Deposition Matters**

Defense counsel then moves on to make arguments based on rank speculation.  Defense counsel proceeds to argue that plaintiff's counsel wrongfully "discussed" testimony with her client during a break in a deposition.  (Defendant's memorandum at ¶ 6(C).  She has no evidence (and carefully says "may") for that contention.  Simply because plaintiff communicated to her counsel a desire to correct her testimony is not in any way a "discussion" about the substance of her testimony.

Defense counsel then moves on to her contention that somehow plaintiff's counsel violated the rules during plaintiff's deposition.  (Defendant's memorandum at ¶ 7(A).This specious set of arguments is a summary of the arguments made in defendant's motion for sanctions, to which plaintiff responded at length in its own opposition to that motion (See Docket Number 73, including appendix).  As that opposition pointed out, defense counsel's own inability to distinguish the nature of the claims raised in this action, and her own insistence on trying to take discovery of claims never made in the pleadings, certainly contributed to the difficulties that arose during the deposition.

**Defendant's Insistence On Expert Discovery From Phantom Experts**

Defense counsel again repeats her erroneous claims that plaintiff failed to make expert disclosures.  (Defendant's memorandum at ¶ 7)(B). This is the second time defendant has made this claim.  The first time, in the aforementioned motion for sanctions, defendant actually

6

attached to the motion as an exhibit the very documents showing that this claim is utterly baseless!  Exhibit A to that motion is plaintiff's counsel's own statement, after identifying two treating physicians as persons who have relevant knowledge, that " "*they have not been retained nor specially employed to give expert testimony in this case*" nor were they "employees of plaintiff whose regular duties involved giving expert testimony...." (Def. Ex. A, page 2) (emphasis supplied).

It is a shame that defense counsel has now wasted this Court's time with two different motions demanding plaintiff's counsel be punished for failing to produce expert disclosures that do not exist for people who are not expert witnesses in this case.  Plaintiff's counsel regrets that this Court has been burdened with the consequences of defense counsel's refusal to read the documents in her possession.[4]

Defense counsel also alleges plaintiff's supposed failure to allow defendant to depose these two physicians as "expert witnesses."(Defendant's memorandum at ¶ 7)(C)  That is both false and confused.  Defense counsel can be forgiven, perhaps, for her own confusion, though since it arises from her decision to refuse to read documents in her possession, she should be held accountable for relying on her confusion.  There is no excuse for her willful misstatements, however.

First, the confusion.  Defense counsel cites a rule about deposing expert witnesses-- but neither of these physicians is an expert witness.  Both are fact witnesses only.  One treated only

---

4  As noted in the response to the motion to sanctions, defense counsel's odd unwillingness to read documents has revealed itself in her inability to recognize what the Amended Complaint actually says (see Docket Number 73 at 20-21), her confusion about chronology (*id*. at 13),and her totally inaccurate insistence that the Amended Complaint claimed defendant caused Dr. Mezu to suffer a coma (the Amended Complaint never mentions Dr. Mezu's coma).

Olachi Mezu, including performing brain surgery on her (that is Dr. Huang). The other is a family physician who saw both plaintiff and her daughter, Olachi Mezu.

Now, for what is false. Both physicians have been scheduled for deposition sometime in October -- at least according to emails plaintiff's counsel has received, because defense counsel never bothered to serve plaintiff's counsel with a copy of either notice of deposition or the subpoenas despite repeated requests from plaintiff's counsel. (Plaintiff's counsel, however, has not moved to sanction defense counsel for this disregard of Federal Rule of Civil Procedure 30(b)(1), nor any of the other times defense counsel ignored the rules).

Second, as far as medical records are concerned-- plaintiff has produced all of her records for defense counsel. Defense counsel claims plaintiff has given no consent to questioning about her records. That is false, but any dispute can be obviated right now-- **Plaintiff freely gives consent to defense counsel to ask, and to Dr. Nze to answer, any questions about plaintiff's own medical records, even though most of those questions will be irrelevant to a single claim made in the Amended Complaint.**

Defense counsel's failure to read the Amended Complaint, or refusal to pay attention to what it says, has led her, apparently, to believe that plaintiff has made claims that defendant is responsible for certain health problems she has had. It is true plaintiff, on a personal level, feels her employer's actions have contributed to her suffering in a physical way, and she has expressed that belief in correspondence and other papers-- but that is not a claim made in the Amended Complaint.

The more problematic issue is defense counsel's insistence on access to the medical records of Olachi Mezu. As repeatedly explained before in this case, Olachi is not a party. Her

8

records belong to her, not to plaintiff.  Plaintiff has no legal right to produce those records, or to consent to their production by Olachi's physicians.  The medical records in question do not belong to Dr. Mezu but belong to another person, Olachi, who is not a party to this litigation. Furthermore, they are in the possession of Olachi's health care providers, who are forbidden to disclose them to anyone but Olachi Mezu without her permission.

The HIPAA Privacy Rule regulates the use and disclosure of certain information held by "covered entities" (generally, health care clearinghouses, employer sponsored health plans, health insurers, and medical service providers that engage in certain transactions.) It establishes regulations for the use and disclosure of Protected Health Information (PHI).  PHI is any information held by a covered entity which concerns health status, provision of health care, or payment for health care that can be linked to an individual.  45 C.F.R. 164.501.  This is interpreted rather broadly and includes any part of an individual's medical record or payment history.

A covered entity-such as Johns Hopkins University Hospital, where Olachi received her emergency brain surgery, or Dr. Huang, her neurosurgeon-- may disclose PHI to facilitate treatment, payment, or health care operations, 45 C.F.R. 164.524(a)(1)(ii), or if the covered entity has obtained authorization from the individual.  45 C.F.R. 164.524(a)(1)(iv).  However, when a covered entity discloses any PHI, it must make a reasonable effort to disclose only the minimum necessary information required to achieve its purpose. 45 C.F.R. 164.524(b).

The records MSU seeks belong to Olachi, not Dr. Mezu.  They are in the control of Olachi's doctors and hospitals and other health care providers.  If defendant wants to see them, defendant will have to seek them from those doctors and hospitals and other health care

providers.  Of course, those health care providers will refuse because the request seeks information the law *forbids them to disclose.*  These records belong to Olachi Mezu.  Olachi is not a party to this action and MSU has no right to see them.

Olachi's medical records, moreover, are entirely irrelevant, no matter what they contain. Even if the records revealed the doctors all were engaged in a huge practical joke-- Johns Hopkins' neurosurgical team all got together and decided to cut Olachi's skull open simply on a lark--the issue is not what the medical records reveal, but what these physicians told Dr. Mezu about Olachi's condition and her needs, which led Dr. Mezu to seek FMLA leave.  To date, defendant has refused to focus on those relevant issues in the discovery taken.

### Defense Counsel's Confused Claims About Document Productions

Without citation to any point in the record, defendant's last contention (Defendant's memorandum at ¶8(B)) is that plaintiff's counsel supposedly "used" her position as a California-based attorney to suggest an "early" production of documents take place at a time when plaintiff's counsel was in Maryland.  Defense counsel apparently was outraged that plaintiff's counsel suggested a reasonable plan of production.

The reason, perhaps, that defendant failed to cite the record is that to do so would have provided context to show how dishonest this last complaint in the memorandum really is. The statement to which defendant refers is found in the motion to compel plaintiff filed, and to which defendant has yet to respond, at page 2:

> On June 15, 2010 , counsel for defendants requested an extension of time in which to respond.  Plaintiff's counsel agreed to an extension  until June 29, 2010.
> In the meantime, plaintiff's counsel traveled from California to Maryland to participate in a mediation which took place on June 23, 2010.  Therefore, plaintiff's counsel was in Maryland and could have reviewed documents at Morgan State during that time, which was

10

after the initial due date for responses to the document requests.

Unfortunately, on June 29, 2010, *Morgan State did not fully respond.* Instead, Morgan State emailed unsigned interrogatory answers, and responses to document requests without any actual documents attached. Many of the answers were incomplete, and although n*o documents actually were produced, the written responses made it clear that defendant did not intend to produce many, perhaps most, of the documents requested.* (See Exhibit 2, a set of defendants' discovery responses). The nature of the deficiencies will be spelled out below.

(Motion to compel at 3). The only other mention of that trip to Maryland was in the context of defendant's demand to be paid before it would produce a single piece of paper:

Rather, it remains presumptively the case that the party making the production should bear the costs.

Among the factors to evaluate before even considering ignoring the presumption and shifting the costs to plaintiff was that defendants' discovery responses were due well before the mediation but defendants sought extra time. Had defendant complied with its normal obligations, the time for production would have been on or before the time plaintiff's counsel was in Maryland, and counsel then could have inspected the documents and made copying arrangements then and there. Yet having failed to produce the documents then, defendants now seek to charge some unspecified amount before even producing any documents.

Motion to compel at 11. In other words, the only mention of the trip to Maryland was to say this-- defendant was supposed to produce documents by June 15. It begged for more time. Plaintiff granted that request. Thus, an ideally convenient time to produce documents was missed because defendant begged for more time to respond. Then defendant failed to do so-- it avoided responding, even when the new due date came. Instead, it demanded it be paid, claiming some sort of inconvenience-- but the inconvenience was self-imposed by defendant's own inability to respond on time.

In other words, plaintiff's counsel did not "use" her California location to seek early discovery. She did not seek early discovery at all. Rather, defense counsel "used" her inability to respond on time to discovery requests to avoid providing discovery. She answered late (with plaintiff's permission) and then answered inadequately, and would not produce documents without charging for them. The only point of mentioning that counsel could easily have reviewed the documents in late June was to point out that defendant's own delay caused a large part of the inconvenience in this matter.

11

## **CONCLUSION**

For all the reasons cited above, defendant's motion to revoke plaintiff's counsel's admission *pro hac vice* should be denied.


Dated: September 24, 2010                              Respectfully submitted,


                                    /S/ C. Valerie Ibe, Esq.
                                    Law Offices of C. Valerie Ibe,
                                    A  Professional L aw Corporation
                                    23614 Nadir Street
                                    West Hills, CA 91304
                                    Telephone: 818-346-8777
                                    Email:Kancvi@aol.com
                                    Bar ID: 94234
                                    Counsel for Plaintiff, Rose Ure Mezu


                                     S/ John M. Singleton, Esq.
                                     Singleton Law Group
                                     400 Redland Court, Suite 107
                                     Owings Mills, MD 21117
                                     Telephone: 410-902-0073
                                     Fax: 410-902-7372
                                     Email:jmsingleton@sgt-law.com
                                     Bar ID: 02275
                                     Counsel for Plaintiff, Rose Ure Mezu


12

**CERTIFICATE OF SERVICE**
**All Case Participants Are CM/ECF Participants**

I hereby certify that on September 24, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Sally Lotz Swann     sswann@oag.state.md.us,


/S/ C. Valerie Ibe, Esq.
Law Offices of C. Valerie Ibe,
A  Professional L aw Corporation
23614 Nadir Street
West Hills, CA 91304
Telephone: 818-346-8777
Email:Kancvi@aol.com
Bar ID: 94234
Counsel for Plaintiff, Rose Ure Mezu


S/ John M. Singleton, Esq.
 Singleton Law Group
 400 Redland Court, Suite 107
 Owings Mills, MD 21117
 Telephone: 410-902-0073
 Fax: 410-902-7372
 Email:jmsingleton@sgt-law.com
 Bar ID: 02275
Counsel for Plaintiff, Rose Ure Mezu

13