# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
*Northern Division*

|  |  |
|---|---|
| ROSE URE MEZU, | * |
| Plaintiff, | * |
| v. | * Civil Case No.: WMN-09-2855 |
| MORGAN STATE UNIVERSITY, | * |
| Defendant. | * |

## MEMORANDUM AND ORDER

This Memorandum and Order addresses non-party Dr. Olachi Mezu's Motion to Strike the Defendant['s] Expert's Affidavit Filed in Response to the Court's Order of June 20, 2011, ECF No. 127; Plaintiff Rose Ure Mezu's[1] Motion to Strike the Affidavit of Dr. James Conway and to Quash the Subpoena Seeking the Confidential Medical Records of Non-Party, Dr. Olachi Mezu, ECF No. 130; Defendant Morgan State University's Response to Olachi Mezu's Motion to Strike and Plaintiff's Motion Strike and to Quash, ECF No. 139; Plaintiff's Reply to Defendant's Response, ECF No. 141; and Dr. Olachi Mezu's Reply, ECF No. 143.

I find that a hearing is unnecessary in this case. *See* Loc. R. 105.6. For the reasons stated herein, Dr. Olachi Mezu's Motion to Strike is DENIED. Plaintiff's Motion to Strike and to Quash the Subpoena Seeking Dr. Mezu's Medical Records also is DENIED. This Memorandum and Order therefore disposes of ECF Nos. 127, 130, 139, 141, and 143.

---

[1] Olachi Mezu and Rose Ure Mezu are both properly referred to as "Dr. Mezu." For the sake of clarity, this Court will refer to Olachi Mezu as "Dr. Mezu" and Rose Ure Mezu as "Plaintiff."

1

I. **BACKGROUND**

The aforementioned motions come to this Court following a long series of unnecessarily contentious discovery disputes in this case. Substantively, Plaintiff alleges, among other things, that Defendant violated the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615, by denying her leave to care for her daughter, Dr. Olachi Mezu, following her daughter's brain surgery. Am. Compl. ¶¶ 94–100, ECF No. 42. This most recent discovery dispute has its origins in the Court's June 20, 2011 Letter Order, ECF No. 117, requiring Defendant to establish the necessity of a subpoena served on the Johns Hopkins Custodian of Records for additional medical records related to Dr. Olachi Mezu. *See* Dr. Mezu's Mot. to Quash Subpoena Seeking Conf. Med. Recs., ECF No. 107; Def.'s Resp., ECF No. 111; Plaintiff's Reply, ECF No. 112; Dr. Mezu's Reply, ECF No. 114. To avoid "any unnecessary intrusion into Dr. Olachi Mezu's privacy," I ordered that Defendant "demonstrate that the medical records already provided by Plaintiff to Defendant during discovery are insufficient in detail to determine the need for Plaintiff to take [FMLA] leave." June 20, 2011 Ltr. Order 1. To make this showing, I directed Defendant to "provide an affidavit from a qualified medical professional demonstrating that the records provided to date are insufficient to determine the need for FMLA leave." *Id.* at 2.

On August 23, 2011, Defendant filed its Response to the Court's Order. ECF No. 125. Included with its Response were the Affidavit of James E. Conway, M[.]D., Ph[.]D, ECF No 125-1; a brief report by Dr. Conway describing his review of Dr. Mezu's medical records, Def.'s Resp., Ex. A, ECF No. 125-2; and Dr. Conway's Curriculum Vitae, Def.'s Resp., Ex. B, ECF No. 125-3. Dr. Conway's affidavit "attests that the medical records provided to Defendant are entirely inadequate for its defense that Olachi Mezu was not incapable of self-care and that the Plaintiff was not required to assist her adult daughter in self-care activities." Def.'s Resp. 1.

In her motion to strike Dr. Conway's affidavit, Dr. Mezu asserts that Defendant's expert affidavit fails to establish that the medical records previously provided to Defendant by Plaintiff are inadequate for determining the necessity of FMLA leave. Dr. Mezu's Mot. to Strike ¶ 1. Dr. Mezu also requests that Defendant's subpoena for her medical records be quashed. *Id.* ¶ 35. Plaintiff's Memorandum in Support of her Motion to Strike and to Quash, ECF No. 130-1, raises similar arguments. Specifically, Plaintiff argues that Dr. Conway's affidavit should be stricken because it "in no way provides a specific explanation for why Olachi Mezu's medical records are relevant to this action, and fails entirely to describe any scope or limitation of the fishing expedition it claims is needed." Pl.'s Mem. Supp. Mot. to Strike 2. The medical records are not relevant, Plaintiff argues, because proof that Dr. Mezu was capable of caring for herself is "no defense" under the FMLA. *Id.* Because Dr. Mezu's additional medical records are not relevant to the case, Plaintiff argues that the subpoena should be quashed. *See id.* at 12.

In its response to the motions, Defendant argues that "the additional records are highly relevant to the Defendant in proving that Plaintiff was not entitled to FMLA leave," and notes that, because the records are subject to the Court's Confidentiality Order, Dr. Mezu's privacy will not be violated by their production. Def.'s Resp. to Mots. 2. Moreover, Defendant contends that "it would be greatly prejudiced" if it were unable to obtain the additional records. *Id.*

In her reply, Plaintiff notes that I previously ordered Plaintiff to respond to Defendant's Response and affidavit. Pl.'s Reply 2 (citing Sept. 12, 2011 Paperless Order, ECF No. 128). Plaintiff interprets my Order as "contemplat[ing] exactly what has been filed—[a] response to the subpoena (in the form of a motion to strike it)." *Id.* In her separate reply, Dr. Mezu states that Defendant's Response did not deny many of the statements Dr. Mezu made in her motion. *See* Dr. Mezu's Reply ¶¶ 1–11. The failure to deny her allegations, Dr. Mezu contends, "is

3

tantamount to an admission [by Defendant] of [their] veracity." *Id.* ¶ 14; *see id.* ¶¶ 16–17 (citing Fed. R. Civ. P. 8(b); *Zielinksi v. Phil. Piers, Inc.*, 139 F. Supp. 408 (E.D. Pa. 1956)).

## II. DISCUSSION

Preliminarily, I note that it is questionable whether Plaintiff has standing to object to the subpoena for Dr. Mezu's medical records. *See United States v. Idema*, 118 Fed. App'x 740, 744 (4th Cir. 2005) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena."); *Clayton Brokerage Co. v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980) (same); 9A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2459 (3d ed. 2008) (same); *cf. also* J. Nickerson, June 28, 2011 Ltr. Order 1, ECF No. 121 ("Plaintiff has no standing to object to Judge Grimm's ruling on *Olachi Mezu's* motion to quash."). Whether Plaintiff has standing to challenge Defendant's subpoena is immaterial, however, because Dr. Mezu and Plaintiff present essentially identical challenges to the subpoena, and Dr. Mezu's challenges are unmeritorious. As explained herein, Dr. Mezu's request that the subpoena be quashed is DENIED. Plaintiff and Dr. Mezu's Motions to Strike Dr. Conway's Affidavit also are DENIED.

Resolution of the pending motions turns on whether the information sought by Defendant is discoverable under Federal Rule of Civil Procedure 26, which provides that all relevant, non-privileged material is discoverable. *See* Fed. R. Civ. P. 26(b)(1). Whether the information sought by Defendant is discoverable depends, in turn, on the terms announced in the June 20, 2011 Letter Order and various legal standards applicable to this case under the FMLA.

### A. Affidavit From a Qualified Medical Professional

In order to establish the need for the subpoenaed records, the Court's June 20, 2011 order required Defendants to produce "an affidavit from a qualified medical professional." June 20,

4

2011 Ltr. Order 2. In their respective motions to strike, Dr. Mezu and Plaintiff suggest several grounds for striking Dr. Conway's affidavit. First, Dr. Mezu's motion suggests that Dr. Conway's affidavit is insufficient because Dr. Conway is not a "qualified medical professional," as the Court's Order requires. *See* Dr. Mezu's Mot. to Strike ¶¶ 7–11. Questions relating to "the qualification of a person" to be an expert witness are decided by the Court. Fed. R. Evid. 104; *see also Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 539 (D. Md. 2007) ("The following types of preliminary matters typically are determined by the judge under Rule 104(a): whether an expert is qualified, and if so, whether his or her opinions are admissible."). Federal Rule of Evidence 702 "expressly recognizes five bases for qualifying an expert: 'knowledge, skill, experience, training or education.'" 29 Wright & Miller, *supra* § 6265 (quoting Fed. R. Evid. 702). Dr. Conway's Curriculum Vitae highlights a wide array of training in the general surgery and neurosurgery fields, notes that he received his M.D./Ph.D. from Johns Hopkins University School of Medicine in 2001, details a variety of awards and honors received throughout his academic and professional career, lists instructor positions that Dr. Conway has held, and provides citations to a large number of publications authored or co-authored by Dr. Conway. *See* Def.'s Resp. to Ct. Order Ex. B, ECF No. 125-3 (Conway CV). Moreover, Dr. Conway's "competence matches the subject matter of his testimony," as Rule 702 also requires. 29 Wright & Miller, *supra* § 6265. Dr. Conway's experience, education, and training all relate to neurosurgery. Def.'s Resp. to Ct. Order Ex. A 1, ECF No. 125-2 (Conway Report). Indeed, Dr. Conway has treated patients "who have experienced the same medical condition as Dr. Olachi Mezu." *Id.* His assertion that the medical records provided to Defendant are insufficient for determining whether Dr. Olachi Mezu was capable of self-care following her surgery is grounded in his experience, training, and education—the very bases that qualify Dr. Conway as

an expert in this case. Therefore, I find that Dr. Conway is "a qualified medical professional" for purposes of satisfying my previous Order. June 20, 2011 Ltr. Order 2.

Second, Plaintiff and Dr. Mezu each suggest that Dr. Conway's affidavit should be stricken as lacking a sufficient "factual basis." Dr. Mezu's Mot. to Strike ¶¶ 3–4; *see* Pl.'s Mem. Supp. Mot. to Strike 10–11. Although Dr. Conway's affidavit itself does not provide extensive detail, it notes that "[t]he basis for [his] opinion is explained in [his report] of August 12, 2011, which is attached as Exhibit A." Aff. ¶ 3. In the report, Dr. Conway explained that he reviewed the medical records provided by Plaintiff, noted the general contents of those records, and explained, in detail, why he concluded that the provided records are insufficient. *See* Conway Report 1. For example, Dr. Conway stated that the records provided do not offer "any relevant insight into the clinical, cognitive, or functional status of the patient, Dr. Olachi Mezu, during or after hospitalization." *Id.* The records provided, he stated, fail to "document her clinical condition and functional status on arrival at the hospital and during the perioperative period through discharge." *Id.* Helpfully, Dr. Conway listed, in some detail, the kind of records that would offer "detail [about] her clinical, functional and cognitive state during her hospitalization," but that were not provided to Defendant. *Id.* In light of the detail contained in his report, it simply cannot be said that Dr. Conway fails to provide a factual basis for his conclusions.

Third, Dr. Mezu states that the affidavit violates various legal standards, including the rule against hearsay, legal standards applicable to affidavits, and the doctrine of unclean hands. Dr. Mezu's Mot. to Strike ¶¶ 24–28. These arguments are frivolous. Dr. Conway's affidavit conforms to the requirements of Fed. R. Civ. P. 26(c)(4) because it is based on his personal knowledge. *See* Fed. R. Civ. P. 26(c)(4). Moreover, it incorporates his written report, in which

he expresses his opinions, as is permitted by Fed. R. Evid. 702 and 704, and those opinions may be based on reliable information that is not itself admissible. Fed. R. Evid. 703.

Finally, Dr. Mezu argues that the affidavit should be stricken and the subpoena quashed because, Defendant, in its Response, fails to deny the allegations made in Dr. Mezu's motion. *See* Dr. Mezu's Reply ¶¶ 1–11. This argument also is frivolous. Defendant is responding to a motion, not a pleading, and therefore is not required to comply with the strict pleading requirements articulated in Fed. R. Civ. P. 8. Defendant's opposition adequately sets forth the reasons why it contests Dr. Mezu's arguments that her medical records are not relevant.

### B. Demonstrating the Need for the Subpoenaed Records

The Court's June 20, 2011 order required Defendant to "demonstrate[, through their expert's affidavit] that the medical records already provided by Plaintiff to Defendant during discovery are insufficient in detail to determine the need for Plaintiff to take [FMLA] leave." June 20, 2011 Ltr. Order 1. In its Response to that order, Defendant asserts that Dr. Conway's affidavit establishes that the medical records previously provided by Plaintiff are "inadequate for its defense that Olachi Mezu was not incapable of self-care and that . . . Plaintiff was not required to assist her adult daughter in self-care activities." Def.'s Resp. 1. Plaintiff states that Dr. Conway's report should be stricken because it fails to explain the relevance of Dr. Mezu's medical records to the present case. Pl.'s Mem. Supp. Mot. to Strike 2. Contrary to Plaintiff's assertions, whether Dr. Mezu was capable of self-care is indeed relevant under the FMLA.

#### 1. *Entitlement to Leave Under the FMLA*

Count II of Plaintiff's Complaint alleges unlawful interference. Am. Compl. ¶¶ 94–100. The FMLA makes it unlawful for an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by [the statute]." 29 U.S.C. § 2615(a)(1); *see also*

7

*Neel v. Mid-Atlantic of Fairfield, LLC*, 778 F. Supp. 2d 593, 596 (D. Md. 2011) ("Claims arising under 29 U.S.C. § 2615(a)(1) are referred to as 'interference' . . . claims."). A plaintiff seeking "[t]o establish unlawful interference with an entitlement to FMLA benefits, . . . must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008).

Under the relevant portions of the FMLA, an eligible employee is "entitled to a total of 12 work weeks of leave during any 12-month period for one or more of the following: . . . (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1). Under the FMLA's definition, a daughter is "a biological, adopted, or foster child, a stepchild, legal ward, or a child of a person standing in loco parentis who is—(A) under 18 years of age; or (B) 18 years of age or older and incapable of self-care because of a mental or physical disability." *Id.* § 2611(12). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."[2] *Id.* § 2611(11). Thus, for

---

[2] The Department of Labor's regulations relating to the FMLA provide additional guidance in this area. Inpatient care is defined as "an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity . . . , or any subsequent treatment in connection with such inpatient care." 29 C.F.R. § 825.114. Incapacity, in turn, "means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id.* § 825.113(b). Continuing treatment may include any of the following: (1) a "period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition"; (2) a "period of incapacity due to pregnancy, or for prenatal care"; (3) a "period of incapacity or treatment . . . due to a chronic serious health condition"; and (4) a "period of incapacity which is permanent or long-term due to a condition for which treatment may not be

Plaintiff to establish that she was entitled to leave under the statutory rubric described above, she must show that her daughter, Dr. Mezu, who is over eighteen years of age, had "a serious health condition" that rendered her "incapable of self-care." *See id.* §§ 2612(a)(1), 2611(12).

Indeed, the Fourth Circuit has made clear that, to establish a prima facie case for FMLA interference, a plaintiff must establish that she or an applicable relative "was afflicted with an FMLA-qualifying condition, because otherwise she did not have any right under the Act with which her employer could have interfered." *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 384 (4th Cir. 2001); *see Adams v. Wallenstein*, No. DKC-08-1601, 2011 WL 1807787, at *6 (D. Md. May 11, 2011) ("Unless an employee is afflicted with an 'FMLA-qualifying condition'— that is, a 'serious health condition,' he would not have any FMLA rights."); *Rodriguez*, 545 F. Supp. 2d 508, 515–16 (D. Md. 2008) (noting that a "serious health condition" is a "core requirement[] for triggering an employer's obligations" under the FMLA). Therefore, Plaintiff must establish that Dr. Mezu suffered from a "serious health condition" to establish that Plaintiff was entitled to FMLA leave. 29 U.S.C. § 2612(a)(1); *see Rhoads*, 257 F.3d at 384.

Dr. Conway's affidavit and report are submitted by Defendant to demonstrate that the medical records previously provided to Defendant do not provide a sufficient basis for determining whether Dr. Olachi Mezu's condition properly can be characterized a "serious health condition" entitling Plaintiff to leave under the FMLA.[3] *See* Def.'s Resp. 1.

---

effective." *Id.* § 825.115. Treatment "includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." *Id.* § 825.113(c). "[R]outine physical examinations" are not considered treatment under the regulations. *Id.*

[3] In her motion to strike, Dr. Mezu also contends that Dr. Conway's affidavit exceeds the scope of his role as a medical expert by inappropriately offering legal opinions. Dr. Mezu's Mot. to Strike ¶¶ 13–14. This argument lacks merit. Dr. Conway's conclusion that the medical records are insufficient, Conway Report 1, is a conclusion regarding whether the provided records adequately establish the physical and/or mental condition of Dr. Olachi Mezu in the relevant time period. It is not a conclusion regarding Plaintiff's ability to establish a prima facie case for

Consequently, through Dr. Conway's affidavit and report, Defendant has satisfied this Court's June 20, 2011 order by "demonstrat[ing] the need for the subpoenaed records." June 20, 2011 Ltr. Order 1. Specifically, Defendant has demonstrated that the additional medical records are necessary to establish its defense to Plaintiff's FMLA interference claim—that Plaintiff is unable to establish the "qualifying health condition" necessary for a successful interference claim. *Rhoads*, 257 F.3d at 384; *Rodriguez*, 545 F. Supp. 2d at 515–16; *Adams*, 2011 WL 1807787, at *6. The requested documents therefore fall within the broad scope of discovery permitted by the Federal Rules. *See* Fed. R. Civ. P. 26(b)(1). In light of these considerations, there is no merit to Plaintiff's argument that Dr. Mezu's additional medical records are not relevant to this case.

### 2. *The FMLA's Second Opinion Procedures*

In her Motion to Strike, Plaintiff suggests that Defendant's failure to follow the FMLA's "second opinion" protocol bars Defendant from now challenging whether Dr. Mezu had a "serious medical condition" that would entitle Plaintiff to leave. *See* Pl.'s Mem. Supp. Mot. to Strike 7–8. Plaintiff's argument is without merit. A brief introduction to the FMLA's second (and third) opinion procedures is helpful. Under the FMLA, "[a]n employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee or of the son, daughter, spouse, or parent of the employee . . . , as appropriate." 29 U.S.C. § 2613(a). A certification is sufficient "'if it articulates: the date on which the serious health condition commenced; its probable duration; the appropriate medical facts, within the health care provider's knowledge regarding the condition; and a statement' that the employee is 'needed to care for the son, daughter, spouse or parent and an estimate of the amount of time that

---

FMLA interference. The fact that such information, in turn, would be used to establish Defendant's defense, does not, in itself, render Dr. Conway's conclusion a legal opinion. Even if Dr. Conway's conclusion is properly characterized as an opinion regarding an ultimate legal issue, he would nonetheless be permitted to express it. *See* Fed. R. Evid. 704.

such employee is needed to care for the son, daughter, spouse or parent.'" *Stroder v. United Parcel Serv., Inc.*, 750 F. Supp. 2d 582, 590 (M.D.N.C. 2010) (quoting *Rhoads*, 257 F.3d at 383).

In situations where the employer doubts "the validity of the certification," it may require, at its own expense, that "the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information . . . [related to the request] for such leave." *Id.* § 2613(c). If the second opinion differs from the opinion provided in the original certification, the employer may require, at its own expense, that "the employee obtain the opinion of a third health care provider designated or approved jointly by the employer and the employee." *Id.* § 2613(d)(1). The opinion of the third health care provider is "considered to be final and . . . binding on the employer and employee." *Id.* § 2613(d)(2).

The Fourth Circuit has considered whether a plaintiff employee "establishe[s] a serious health condition as a matter of law based on" the defendant employer's "failure to follow the FMLA's second opinion procedures," *Rhoads*, 257 F.3d at 385, concluding that a defendant employer may later challenge the validity of the original certification, even though the defendant did not use the FMLA's second (or third) opinion procedure. *See id.* The Court reasoned:

> The FMLA provides only that an employer "may" seek a second, or third, opinion if it questions the validity of an employee's proffered medical certification of her condition. Because the term "may" is permissive, the plain language of the statute indicates that an employer who questions the validity of a certification has the option of seeking a second and third opinion, without being required to do so. Moreover, the plain language of the Act does not suggest that an employer must pursue these procedures *or* be forever foreclosed from challenging whether an employee suffered from a serious health condition; and nothing in the legislative history of the FMLA explicitly supports that interpretation.

*Id.* at 385–86 (citations and internal quotation marks omitted). Thus, "[i]f the employer does not obtain a second opinion at the time of the FMLA leave request, the employer may still later

challenge whether the employee or family member had a 'serious health condition.'" *Stroder*, 750 F. Supp. 2d at 591 (citing *Rhoads*, 257 F.3d at 386). Therefore, Defendant's failure to invoke the second (and third) opinion procedures provided under the FMLA does not bar it from now challenging whether Dr. Mezu had a "qualifying health condition" under the statute.

As the foregoing illustrates, Defendant, through Dr. Conway's affidavit and report, has established both the necessity and relevance of Dr. Mezu's additional medical records, as this Court's order required. Neither Plaintiff nor Dr. Mezu presents a non-frivolous reason for striking Dr. Conway's affidavit. Accordingly, both motions to strike are hereby DENIED. Additionally, Dr. Mezu has not presented a valid reason for quashing the subpoena for her medical records. Dr. Mezu does not suggest in her motion that the subpoena "requires disclosure of privileged or other protected matter," or that it "subjects [her] to undue burden." *See* Fed. R. Civ. P. 45(c)(3)(A) (listing instances in which the Court must quash a subpoena). This Court's Discovery Guidelines remind us that "Fed. R. Civ. P. 26 requires that discovery be relevant to any party's claim or defense; proportional to what is at issue in a case; and not excessively burdensome or expensive as compared to the likely benefit of obtaining the discovery being sought." Guideline 1.a. Dr. Mezu's additional medical records remain significant to issues in this case, her privacy rights in these documents will be protected through implementation of a Confidentiality Order governing the records, and production of the documents cannot be said to be "excessively burdensome or expensive." *Id.* Accordingly, Dr. Mezu's request that the court strike Defendant's subpoena for her additional medical records is DENIED.

## III. CONCLUSION

For the reasons stated above, Dr. Olachi Mezu's Motion to Strike is DENIED, as is her request to quash the subpoena for her medical records. Plaintiff's Motion to Strike also is DENIED. The subpoenaed documents are to be produced, subject to the following conditions:

1. All medical records produced in response to Defendant's subpoena will be designated confidential. The procedure for designating discovery materials confidential is described in the Stipulated Order Regarding Confidentiality of Discovery Material and Inadvertent Disclosure of Privileged Material ¶ 1, ECF No. 98, presently in place in this case.

2. If the subpoenaed medical records are filed with the Court by either party in any future motions, they "shall be filed under seal . . . , together with a simultaneous motion" to seal pursuant to this Court's Local Rules 104.13 and 105.11. Stipulated Order ¶ 2.

3. The confidential medical records may be reviewed only by the following individuals: Counsel for the parties, support staff employed by Counsel that is directly involved in this litigation, experts employed by the parties or Counsel for the parties to assist in the preparation and trial of the present matter, and one designated client representative. The records may be used or referenced in motions, depositions, and expert discovery.

4. Beyond what is necessary for the persons listed above to review the confidential medical records, photocopying or dissemination of the records is prohibited under this Order.

5. All persons permitted access to the confidential medical records must sign a statement stating that they have read this Confidentiality Order and must acknowledge that they are bound to comply with the terms of the Order under penalty of contempt of Court.

6. At the conclusion of this litigation, all medical records designated confidential under this Order and not received in evidence will be returned to Plaintiff or to Dr. Olachi Mezu, or, if stipulated by the parties, destroyed. Stipulated Order ¶ 5; *see also* Loc. R. 113.3.

Dated: October 25, 2011 _____ /S/_____
Paul W. Grimm
United States Magistrate Judge

hlw