IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


ROSE URE MEZU                    *
                                 *
                                 *
v.                               *    Civil Action No. WMN-09-2855
                                 *
                                 *
MORGAN STATE UNIVERSITY          *
     et al.                      *
                                 *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Before the Court is Defendants' Motion for Summary
Judgment, ECF No. 168, and Plaintiff's Motion for Partial
Summary Judgment, ECF No. 181.  Both motions are fully briefed.
Upon review of the pleadings and the applicable law, the Court
determines that no hearing is necessary, Local Rule 105.6, and
that both motions will be denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Dr. Rose Mezu has been employed by Defendant
Morgan State University (Morgan State) since 1993.  She
identifies her national origin as Nigerian, her ethnicity as
Igbo, and her race as "commonly perceived as 'black' in the
United States."  Am. Compl. ¶ 89.  Defendant Armada Grant is the
director of the human resources/personnel department for Morgan
State and Defendant Dolan Hubbard is the chair of the English
and Language Arts Department, the department in which Plaintiff

teaches.  They were originally sued in their personal and
official capacities.

Plaintiff's relationship with her employer has been
contentious as evidenced by the fact that Plaintiff has filed
four lawsuits against Morgan State, of which this is the third.
The first suit, Mezu v. Morgan State Univ., Civ. No. JFM-02-3713
(the 2002 suit), was filed after Plaintiff was denied a
promotion to rank of full professor in 2000.  That suit included
both a failure to promote claim and a "hostile environment"
claim under Title VII of the Civil Rights Act, as amended, 42
U.S.C. §§ 2000e, et seq. (Title VII), a claim under the Equal
Pay Act, 29 U.S.C. § 206(d) (EPA), and a claim under the Family
Medical Leave Act of 1993, 29 U.S.C. §§ 2601, et seq. (FMLA or
the Act).  On March 31, 2003, Judge J. Frederick Motz dismissed
the Equal Pay Act claim for failure to state a claim, dismissed
the FMLA claim as barred by Eleventh Amendment immunity,[1]
dismissed the Title VII failure to promote claim as untimely and

---

[1] In ruling on the motion to dismiss, Judge Motz opined that it
was not clear that Plaintiff, who was proceeding pro se, was
actually asserting a FMLA claim as there were no allegations in
the complaint related to such a claim.  Id. at 297 n.6.  Erring
on the side of completeness, however, he briefly addressed the
FMLA issues.  After Judge Motz rendered his decision, the
Supreme Court overruled the Fourth Circuit precedent on which
Judge Motz relied and held that Congress intended to abrogate
immunity with regard to the "family care" provision of the FMLA.
Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721 (2003).

granted summary judgment on Plaintiff's Title VII hostile
environment claim.  <u>Mezu v. Morgan State Univ.</u>, 264 F. Supp. 2d
292 (D. Md. Mar. 31, 2003), <u>aff'd</u> 75 F. App'x 910 (4th Cir.
2003).

Plaintiff's second suit, <u>Mezu v. Morgan State Univ.</u>, Civ.
No. WDQ-08-1867 (the 2008 suit), challenged a 2006 denial of
promotion.  In addition to reasserting that she was denied a
promotion on account of race and national origin, Plaintiff
asserted that the denial was in retaliation for engaging in
protected EEOC activities.  On March 23, 2009, Judge William
Quarles dismissed her failure to promote claim on the ground
that her EEOC charge was not timely filed and her retaliation
claim on the ground that she failed to exhaust her
administrative remedies as to that claim.  Civ. No. WDQ-08-1867,
ECF Nos. 16 & 17, <u>aff'd</u>, 367 F. App'x 385 (4th Cir. 2010).

In this third suit, Plaintiff originally asserted four
causes of action: a retaliation claim under Title VII, a hostile
environment claim under Title VII, an interference claim under
the FMLA, and a retaliation claim under the FMLA.  While the
Complaint recounted some of the long history of conflict between
Plaintiff and her employer, it focused on two specific courses
of events that Plaintiff alleged were "recent hostile actions
cognizable under Title VII."  Compl. at ¶ 9.  The first arose

out of Plaintiff's request for leave to attend her mother's funeral in Nigeria in the fall of 2008 and Defendants' response to that request. The second arose out of Plaintiff's request for FMLA leave to take care of her daughter, Dr. Olachi Mezu (Dr. Mezu),[2] after that daughter underwent emergency brain surgery following a subarachnoid hemorrhage in August of 2009. As discussed more fully below, Plaintiff alleged that: Defendants improperly delayed responding to her requested FMLA leave; denied the request once they finally did respond, forcing her to take sick leave instead; and, once she returned to work, did not pay her and cancelled her benefits, including health insurance, for several weeks. Only after Plaintiff filed this suit did Morgan State recommence paying her salary and reinstate her benefits.

Ruling on Defendants' motion to dismiss, the Court dismissed Plaintiff's hostile environment claim under Title VII, finding that Plaintiff was complaining of the same kind of conduct that Judge Motz found to be insufficiently "severe and pervasive" in the 2002 suit. The Court also dismissed the claims brought against Grant and Hubbard in their individual capacities. ECF No. 24 at 30 n.15. The Court, however, denied

---

[2] While both mother and daughter could be referred to as "Dr. Mezu," for ease of reference in this the Court will refer to Plaintiff Dr. Rose Mezu in this Memorandum simply as Plaintiff, and Plaintiff's daughter as Dr. Mezu.

Defendants' motion as to the retaliation claims. The Court
found that being taken off the payroll and going without pay or
benefits for several weeks was sufficiently adverse that it
would dissuade a reasonable worker from taking the protected
action. Id. at 28-29. The Court also found that there was
close enough temporal proximity between these alleged
retaliatory actions and her recent Title VII suit and FMLA
request to establish a causal connection. Id. at 29-30.

Finally, the Court permitted Plaintiff's FMLA interference
claim to go forward. Significantly, the Court recognized that
Plaintiff was bringing this claim only in relation to her 2009
request for FMLA leave to take care of her daughter after the
brain surgery. The Court noted that while Defendants argued
strenuously that Plaintiff was not entitled to FMLA leave to
attend her mother's funeral in 2008, this was a claim never made
by Plaintiff. Id. at 31 n.16 (citing Compl. ¶ 88).

In the fourth suit filed by Plaintiff against these
Defendants, Mezu v. Morgan State Univ., Civ. No. WMN-11-3072,
Plaintiff alleges that Defendants retaliated against her for
filing the 2009 suit. The alleged retaliatory actions in this
most recent suit relate to teaching loads and also the denial of
another FMLA request made in the fall of 2011. This suit
remains pending before the undersigned.

In Defendants' pending motion in this third suit,
Defendants repeat many of the same arguments made in their
motion to dismiss and seek judgment on all of Plaintiff's
claims.  In her motion, Plaintiff suggests that it should be
established as a matter of law that Morgan State interfered with
her FMLA rights and that trial of her interference claim should
be limited to establishing the damages caused by that
interference.  Plaintiff also suggests that the Court should
hold that she has established a prima facie case for retaliation
under the FMLA.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides
that summary judgment "shall be rendered forthwith if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c).  A material fact is one that "might
affect the outcome of the suit under the governing law."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
genuine issue over a material fact exists "if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party."  Id.  In considering a motion for summary

judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. Id. at 249.

When both parties file motions for summary judgment, as here, the court applies the same standards of review. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991); ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment - even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co., 627 F. Supp. 170, 172 (D. Md. 1985).

**III. DISCUSSION**

### A. FMLA Interference Claim

The FMLA provides that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Among the rights provided is the right of an eligible employee of a covered employer to

take unpaid leave for a period of up to twelve work weeks in any twelve-month period "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(c). After the period of qualified leave expires, the employee is entitled to be reinstated to the former position or an equivalent one with the same benefits and terms of the employment that existed prior to the exercise of the leave. Id. § 2614(a).

To establish an FMLA interference claim, a plaintiff must prove: (1) she was an eligible employee, (2) her employer is a covered employer, (3) she was entitled to leave under the FMLA, (4) she gave her employer notice of her intent to take leave, and (5) her employer denied her FMLA benefits or interfered with FMLA rights to which she was entitled. Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004). Morgan State argues: (1) that Plaintiff was not entitled to FMLA leave because her daughter did not have a "serious health condition" that rendered her "incapable of self-care;" (2) that Plaintiff failed to provide adequate notice to Morgan State of her need for FMLA leave; (3) that Morgan State did not interfere with Plaintiff's FMLA rights and, (4) that Plaintiff was not prejudiced by any of the alleged FMLA violations. As to those

last two points, Morgan State remarkably argues that, "[w]hile [Morgan State] notified [Plaintiff] that [Morgan State] was denying her FMLA request, in actuality, [Morgan State] approved her request."  ECF No. 168-1 at 24.[3]

In her cross motion, Plaintiff counters that her daughter clearly suffered from a serious medical condition, that Morgan State was given more than sufficient notice of that condition but, nevertheless, interfered with her FMLA rights both by denying leave and by significantly delaying any response to her leave requests.  Plaintiff suggests that the evidence is undisputed on these issues such that she is entitled to summary judgment as to liability on her FMLA interference claim.  For the reasons explained below, the Court agrees the evidence tips in Plaintiff's favor.  It does not tip far enough, however, for the Court to find that Plaintiff is entitled to judgment as a matter of law.

Beginning with the threshold issue of whether Dr. Mezu had a serious medical condition rendering her incapable of self-care, it is clear that she did have such a condition for at least a significant portion of the time for which Plaintiff requested leave.  On the evening of August 3, 2009, Dr. Mezu

---

[3] In this memorandum, the Court will reference the numbering in the ECF heading if the document was electronically filed, which is not necessarily consistent with the exhibit numbering or the page numbering on the hard copies of these documents.

began to suffer a horrible headache while traveling on the New Jersey Turnpike. She was transported by ambulance to a local Hospital and then airlifted to Johns Hopkins Hospital. Once at Hopkins, she was rushed into emergency surgery and was in surgery for more than seven hours. She had suffered a ruptured cerebral aneurysm, a life threatening condition, and to correct that condition, the surgeons at Hopkins performed a right pterional craniotomy.

Dr. Mezu was discharged from the hospital about ten days later, on August 13, 2009. Dr. Mezu's treating neurosurgeon, Dr. Judy Huang, advised Dr. Mezu to take "an extended medical leave of absence due to the expected fatigue, decreased stamina, and diminished ability to concentrate" following the aneurysm and surgery. ECF No. 181-25. Dr. Huang further advised that Dr. Mezu would need someone to aid her in her "daily activities of living." Dr. Mezu Aff. ¶ 6. This assistance included helping her with trips to the bathroom, to shower, to take medications throughout the day and night, testing motor skills after medication, and providing meals. Dr. Mezu also required assistance so that she could do numerous at-home physical therapy exercises. Id. ¶ 11; see also ECF No. 181-14 at 3 (physical therapy orders). A post-operative follow-up appointment with Dr. Huang was scheduled for October 2, 2009.

Dr. Mezu's recovery progressed well.  Nonetheless, at the October 2, 2009 appointment, Dr. Huang determined that Dr. Mezu would continue to need "assistance w/ activities of daily living."  ECF No. 181-19 at 4 (Certification dated 10/2/2009).  She also needed continued physical therapy "to increase endurance."  Id. at 3.  Dr. Mezu was released to return to work on or about December 7, 2009.

In arguing that Dr. Mezu did not have a serious health condition, Morgan State relies primarily on its belief that, about one month after her emergency surgery, "Dr. Mezu was able to return to her marital home, without her mother."  ECF No. 168-1 at 10.  The parties' characterizations of that "return to the marital home" are vastly different.  Morgan State cites portions of testimony given by Dr. Mezu's ex-husband in the course of the couple's divorce proceedings – testimony which paints a picture of a visit where the couple went for a walk, went to a park, went out to dinner, and Dr. Mezu was able to walk without the assistance of a wheelchair.  Id. (citing Feb. 4, 2010, Hr'g Tr., ECF No. 168-13 at 148-50).  After four days at home, Dr. Mezu attended her parents' wedding anniversary celebration and then "remained at her parents' house for six days to help prepare for her sister's wedding" which took place on September 12, 2009.  Id. (citing Def.'s Ex. K at 150-52).

In a supplemental affidavit, ECF No. 192-1, Dr. Mezu paints a very different picture of this return. She describes a visit that lasted less than 32 hours, from 11:00 Friday evening to first thing Sunday morning. During even that brief time, her husband was unable to care for her, even with meals that were sent by Plaintiff. He claimed he was exhausted from caring for Dr. Mezu and their two year old daughter and insisted that she return to her mother's house until she was fully recovered. Dr. Mezu acknowledged that she accompanied her parents to her sister's wedding, because there would be no one at home to look after her, but that she "sat in a wheelchair quietly – still incapacitated and debilitated" and could not participate in any of the activities during the event. Id.

Morgan State also relies heavily on a note written by Dr. Huang after the October 2, 2009, follow-up visit in which Dr. Huang notes that Dr. Mezu reported that she had "returned to driving last week." ECF No. 169-3. Morgan State concludes that "[c]ertainly, if Dr. Mezu was capable of driving a car on or about September 26, 2009, then Dr. Mezu was capable of self-care." Redacted Paragraphs from Morgan State's Mot. for Summ.

J.[4]  Morgan State, however, is selective in its quotation of Dr.

Huang's note.  Quoted in full, Dr. Huang wrote:

> [Dr. Mezu] does note continued fatigue and she now has
> 8 hour days, and she is tired by 3 o'clock in the
> afternoon.  She returned to driving last week and
> finds that she is only able to drive 30 minutes at a
> time before requiring rest.  She still find[s] it
> difficult to care completely for her young daughter
> and to perform chores.

ECF No. 169-3.  The Court would not conclude that Dr. Mezu's

ability to do limited driving should be equated with the

capability of self-care, particularly in light of the fact that

Dr. Huang also stated after the October 2, 2009, follow-up visit

that Dr. Mezu "requires assistance w/activities of daily

living."  ECF No. 181-19 at 4.

While there may be a dispute of fact as to exactly how long

Dr. Mezu experienced a serious health condition that rendered

her incapable of self-care, the record indicates that, at least

for a significant period of time after the surgery, she needed

her mother's assistance.

---

[4] This document was submitted to the Court in paper form but
never electronically filed.  With these redacted paragraphs,
Morgan State also submitted two exhibits, Exs. S and U.  These
were filed electronically.  ECF Nos. 169-2 and 169-3.  Morgan
State submitted these materials with a motion to seal because
they relate to Dr. Mezu's medical records.  ECF No. 170.  While
much of the information in these documents is found elsewhere in
the unsealed portion of the record, the Court will grant the
motion.  Plaintiff has also submitted material under seal which
related to FMLA requests from other employees of Morgan State.
The Court will also grant Plaintiff's motion to seal that
material.  ECF No. 183.

There are also disputes of fact as to whether Plaintiff gave Morgan State adequate and timely notice of her intent to take FMLA leave. The FMLA permits an employer to require that a request for leave be supported by a certification issued by the health care provider of the family member who is in need of care. 29 U.S.C. § 2613. That certification is considered sufficient if it includes the date on which the serious health condition commenced, the appropriate medical facts within the knowledge of the health care provider regarding the condition, and a statement that the eligible employee is needed to care for the family member and an estimate of the amount of time that such employee is needed to render that care. Id. The regulations implementing this provision further provide that the certification should provide the contact information for and type of practice/specialization of the health care provider and that the "medical facts must be sufficient to support the need for leave. Such medical facts may include information on symptoms, diagnosis, hospitalization, doctor visits, whether medication has been prescribed, any referrals for evaluation or treatment (physical therapy, for example), or any other regimen of continuing treatment." 29 C.F.R. § 825.306.

At least initially, there were some problems with the certification submitted by Plaintiff. The first form submitted

by Plaintiff on August 13, 2009, stated in answer to one question that Dr. Mezu did not qualify as having a "serious health condition" but in answer to another question stated that she did. ECF No. 181-4 (compare answers to questions 3 and 8a). Left blank was the section of the form seeking a description of the medical facts in support of the certification. A subsequent letter from Dr. Huang's office, signed by her Medical Secretary, simply requested that Morgan State "please excuse Dr. Rose Mezu from August 20, 2009 through August 28, 2009 in order to take care of her daughter," but provided no further details. ECF No. 181-6. A second certification signed by Dr. Huang on August 25, 2009, provided some additional information, i.e., that Dr. Mezu had suffered a "subarachnoid hemorrhage – Cerebral aneurysm" and that the duration of the condition would be determined at a post-operative appointment on October 2, 2009. ECF No. 181-13. The certification signed by Dr. Huang after the October 2 follow-up visit was more complete, indicating that "Dr. Mezu suffered from a subarachnoid hemorrhage due to ruptured brain aneurysm. She was hospitalized and requires several months to recover." ECF No. 181-19. The certification also stated that "[Dr. Mezu] requires assistance w/ activities of daily living." Id.

Certainly at some point, at least by October 2, 2009, Plaintiff had given Morgan State sufficient notice of her need for FMLA leave. The Court also notes the different manner in which Morgan State handled Plaintiff's FMLA request as compared to the requests of other employees. As Plaintiff demonstrates in the sealed portion of her motion, ECF No. 182, Morgan State approved FMLA requests from other employees based upon certifications that were as incomplete or more incomplete than Plaintiff's. While Morgan State responds that "[e]ach FMLA leave request requires a highly individualized assessment," ECF No. 191 at 12, a finder of fact could conclude that Morgan State was simply making Plaintiff jump through hoops through which no one else was required to jump.

As mentioned above, in its motion, Morgan State argues that, even if Plaintiff was entitled to FMLA leave and gave proper notice of her intention to take that leave, Morgan State did not violate the FMLA because Plaintiff was eventually paid for the entire period for which leave was requested. In response, Plaintiff counters that the manner in which Morgan State handled her requests constituted interference with her FMLA rights. Under the FMLA, "any violations of the Act or of [the] regulations [implementing the Act] constitute interfering with, restraining, or denying the exercise of rights provided by

the Act." 29 C.F.R. § 825.220(b). Plaintiff notes that FMLA regulations generally require an employer to notify an employee within five business days of receipt of certification whether her leave will be counted as FMLA leave. Id. § 825.300(b)(1). If the employer finds a certification incomplete, it need not make the leave determination within those five days, but is required to inform the employee, in writing, what additional information is needed to make the certification complete and sufficient. Id. § 825.305(c). Courts have held that, "[e]ven where an employee's FMLA leave is eventually approved, an employer's delay in effectuating the leave constitutes a violation." Mueller v. J.P. Morgan Chase & Co., Civ. No. 05-560, 2007 WL 915160 at *13 (N.D. Ohio Mar. 23, 2007) (citing Saroli v. Automation & Modular Components, Inc., 405 F.3d 446, 454 (6th Cir. 2005)).

Here, Morgan State took some action in response to Plaintiff's first attempt to apply for leave which she submitted on August 13, 2009. Grant sent a letter to Dr. Huang on August 19, 2009, seeking additional medical information to support the request[5] and sent Plaintiff an email on August 24, 2009, seeking

---

[5] Plaintiff is critical of Grant for seeking medical information from her daughter's health care provider and argued that doing so is not permitted under the FMLA and was in violation of the Health Insurance Portability and Accountability Act (HIPAA). The Court questions if Plaintiff has standing to assert a

the same.  After Plaintiff submitted the more complete

certification on August 25, 2009, however, she received no

response from Morgan State until she received a letter from

Grant on September 18, 2009, reporting that her request was

denied.  After Plaintiff submitted her October 2, 2009,

certification, she heard nothing back from Morgan State until

November 13, 2009, when she was told that she was being placed

on leave without pay.  Beyond violating the regulation regarding

timely response, Morgan State's handling of Plaintiff's requests

could be found, more generally, to have violated the regulation

that instructs that interfering with the exercise of an

employee's FMLA rights includes "not only refusing to authorize

FMLA leave, <u>but discouraging an employee from using such leave</u>."

29 C.F.R. § 825.220(b) (emphasis added).

As a final argument challenging Plaintiff's FMLA

interference claim, Morgan State argues that Plaintiff was not

"prejudiced" by these alleged FMLA violations.  Morgan State is

correct that it is well established that the FMLA "provides no

relief unless the employee has been prejudiced by the

violation."  <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S.

81, 89 (2002); <u>see also</u> <u>Moticka v. Weck Closure Sys.</u>, 183 F.

App'x 343, 347 (4th Cir. 2006) ("Before liability will be

violation of Dr. Mezu's HIPAA rights or if a violation of HIPAA
is actionable under the FMLA.

imposed on an employer for violating an employee's rights under the FMLA, the employee must show that she was prejudiced by the violation."). It is not correct, however, that because Morgan State eventually restored her to the payroll and gave her back pay, Plaintiff cannot demonstrate that she was prejudiced by its handling of her request.

Employers who violate section 2615 are "liable to any eligible employee affected" for damages and "for such equitable relief as may be appropriate." 29 U.S.C. § 2617(a)(1). Even in cases where prejudice is shown, the employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation." Id. § 2617(a)(1)(A)(i)(II). Although the record in this regard is not as clear as it could be,[6] it seems inconceivable that Plaintiff would not have suffered substantial economic harm as a result of losing pay and benefits for more than a month. While not sufficiently certain to warrant entering judgment on behalf of Plaintiff on the interference claim, that Plaintiff was prejudiced by Morgan

---

[6] Plaintiff states that, because she did not move for summary judgment as to damages, but only as to liability on her interference claim, she did not offer evidence or argument on the factual issue of her damages. ECF No. 192 at 2. The Court notes that Morgan State did not directly raise the issue of the need for proof of "prejudice" in its motion, but only in its reply brief. ECF No. 191 at 2-4.

State's actions is sufficiently disputed such that Morgan State is not entitled to judgment either.

Plaintiff seems to argue that the Court could grant her motion for partial summary judgment as to liability on her interference claim without proof of damages. ECF No. 192 at 2. While Plaintiff has made a strong showing that Morgan State violated the FMLA, the Court views the establishment of prejudice to the Plaintiff as part of the prima facie case for an interference claim. Accordingly, the Court will deny both motions.

## B. Title VII and FMLA Retaliation Claims

For the most part, Morgan State's argument regarding the retaliation claims are the same or very similar to those arguments raised by Morgan State and rejected by the Court at the motion to dismiss stage. See ECF No. 24 at 26-30. Discovery and additional briefing has not changed the Court's view as to whether Plaintiff suffered an adverse employment action and whether there is sufficient proof of causation. The Court still finds that these issues are subject to material disputes of fact.[7]

---

[7] Just recently, Morgan State submitted supplemental briefing to the Court noting that, last month, the Supreme Court issued an opinion holding that the causation standard applicable to retaliation claims under Title VII is a "but-for" standard. ECF No. 194 (citing Univ. of Tex. SW. Med. Ctr v. Nassar, No. 12-484

The Court must briefly address the issue of pretext which was not addressed at the motion to dismiss stage but is raised by Morgan State in its summary judgment motion. ECF No. 168-1 at 34-38. As Morgan State observes, once a plaintiff has established a prima facie case for retaliation, the burden shifts to the defendant to provide a nondiscriminatory reason for the adverse employment action. <u>Yashenko v. Harrah's NC Casino Co., LLC</u>, 446 F.3d 541, 550 (4th Cir. 2006). Once the defendant proffers that nondiscriminatory reason, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext for retaliation. <u>Id.</u>

Morgan State devotes the bulk of its pretext argument to providing explanations for various actions taken by Defendant Hubbard that are peripheral to Plaintiff's central claim, <u>e.g.</u>, not providing Plaintiff with a computer, making unfavorable teaching assignments and raising false claims about her teaching performance. ECF No. 168-1 at 35-38. On what was clearly the most critical adverse action taken against Plaintiff, the withdrawal of Plaintiff's salary and benefits, Morgan State proffers that it was simply a mistake: "Morgan State

_____

(U.S. June 24, 2013)). As Plaintiff correctly observes, however, <u>Nassar</u> resolved a split in the circuits in favor of the position long held in the Fourth Circuit. <u>See, e.g.</u>, <u>Brackman v. Fauquier Cnty.</u>, 72 F. App'x 887, 894 (4th Cir. 2003); <u>Dwyer v. Smith</u>, 867 F.2d 184, 191 (4th Cir. 1989). Thus, <u>Nassar</u> does not significantly change the Court's analysis.

inadvertently removed [Plaintiff] from the payroll and promptly corrected the error." Id. at 35. The Court finds that there is evidence in the record from which it could be inferred that it was not simply a mistake, nor was it promptly corrected.

Morgan State terminated Plaintiff's salary and benefits on or about November 24, 2009. Plaintiff returned to work and submitted to Grant a "Return to Work After FMLA Leave" notice on December 4, 2009. ECF No. 181-25. On December 7, 2009, Plaintiff sent a letter to Grant stating that she was not receiving her pay and noting that Grant and Hubbard were aware that she was working and not being paid. ECF No. 181-26. This is confirmed in a letter sent on December 5, 2009, by Hubbard to Burney Hollis, the Dean of the College of Liberal Arts, in which Hubbard states that he saw Plaintiff on campus on December 4, 2009, and that she handed him her return to work form. ECF No. 181-39. Hubbard inquires in that letter when he should begin to enter regular time for Plaintiff. Id. Plaintiff's counsel represents that, despite many attempts in discovery, nothing was provided regarding any follow up to this December 5, 2009, letter.

It was not until January 21, 2010, that Morgan State informed the State Employee Benefits Division that Plaintiff was taken off of payroll in error. ECF No. 168-28 ¶ 13 (Aff. of

22

Mary Balducci, Director of Operations for Employee Benefits Division). While Grant states that "[w]hen I learned of the error, I immediately placed [Plaintiff] back on regular pay status," ECF No. 168-26 (Grant Aff.), she fails to mention when it was that she first learned of the error. The fact finder could conclude from the limited discovery that Plaintiff was able to obtain that Grant was well aware of the error in early December. In the context of the parties' history, the fact finder could conclude that attributing to a simple mistake the failure to pay Plaintiff for more than six weeks is implausible and pretextual.

Finally, in its Motion for Summary Judgment, Morgan State proffers one additional ground for challenging Plaintiff's Title VII retaliation claim. Relying on the Supreme Court's decision in Clark County School District v. Breeden, and the line of cases following Clark County, Morgan State argues that "'[a] Title VII retaliation claim automatically fails if the underlying claim is objectively unreasonable.'" ECF No. 168 at 25 (citing Clark County, 532 U.S. 268, 270 (2001)). Because this Court dismissed Plaintiff's Title VII claim on a motion to dismiss, Morgan State contends that underlying claim was objectively unreasonable and, as a result, any retaliation claim based on that claim will fail.

Morgan State appears to misunderstand both the nature of
Plaintiff's claim and the nature of retaliation claims under
Title VII.  There are two distinct types of retaliation claims
under Title VII: those brought under the "participation clause"
and those brought under the "opposition clause."  Laughlin v.
Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).
The "participation clause" provides that an employer may not
retaliate against an employee "because [the employee] has ...
participated in any manner in an investigation, proceeding, or
hearing under" Title VII.  42 U.S.C.A. § 2000e-3(a) "The
participation clause is designed to ensure that Title VII
protections are not undermined by retaliation against employees
who use the Title VII process to protect their rights."  Brower
v. Runyon, 178 F.3d 1002, 1006 (8th Cir. 1999).

The "opposition clause," on the other hand, provides that
an employer may not retaliate against an employee "because he
has opposed any practice made an unlawful employment practice"
by Title VII.  42 U.S.C.A. § 2000e-3(a).  As the Fourth Circuit
has observed,

> [t]he distinction between participation clause
> protection and opposition clause protection is
> significant because the scope of protection is
> different.  Activities under the participation clause
> are essential to the machinery set up by Title VII.
> As such, the scope of protection for activity falling
> under the participation clause is broader than for
> activity falling under the opposition clause.

<u>Laughlin</u>, 149 F.3d at 259 n. 4 (citations, quotations omitted).

Plaintiff's Title VII retaliation claim clearly falls under the participation clause as she alleges she was retaliated against for filing her previous EEOC charges and lawsuits. Morgan State completely misses this distinction when it argues, "[b]ecause [Plaintiff's] Title VII claim was not grounded in an objectively reasonable belief that MSU had violated Title VII, [Plaintiff's] <u>opposition activity (e.g. filing the EEOC complaint)</u> is not protected." ECF No. 168 at 27 (emphasis added). The case law cited by Morgan State in support of this argument also relate to claims brought under the opposition clause. <u>See, e.g.</u>, <u>id.</u> at 25 ("<u>Jordon v. Alternative Resources Corp. and IBM Corp.</u>, 458 F.3d 332, 338 (4th Cir. 2006) for the proposition that '[a]n employee's opposition activity is protected only when it responds to an employment practice that the employee reasonably believes is unlawful'").

Although not uniformly, most courts have held that, unlike claims brought under the opposition clause, "[t]here is no good faith or reasonableness requirement for participation clause conduct." <u>Alexander v. Ohio State Univ. Coll. of Social Work</u>, 697 F. Supp. 2d 831, 849 (S.D. Ohio 2010). In a decision issued earlier this year, Chief Judge Lisa Wood of the Southern District of Georgia observed,

In addressing this issue, the First, Third, Sixth, Eighth, and Ninth Circuits have held that a participation clause plaintiff is not required to have had a reasonable basis for the EEOC charge or to have made the charge in good faith. See Slagle v. Cnty. of Clarion, 435 F.3d 262 (3d Cir. 2006) (citing case law and the EEOC Compliance Manual for the proposition "that a plaintiff is protected under the participation clause 'regardless of whether the allegations in the original charge were valid or reasonable'"); Johnson v. Univ. of Cincinnati, 215 F.3d 561 (6th Cir. 2000) (stating that the participation clause's protections "are not lost if the employee is wrong on the merits of the charge" or even "if the contents of the charge are malicious or defamatory"); Brower v. Runyon, 178 F.3d 1002, 1006 (8th Cir. 1999) ("The underlying charge need not be meritorious for related activity to be protected under the participation clause.") (citations omitted); Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994) ("As for the participation clause, 'there is nothing in its wording requiring that the charges be valid, nor even an implied requirement that they be reasonable.") (citations omitted); Sias [v. City Demonstration Agency, 588 F.2d [692] at 695 [(9th Cir. 1978)] (stating that it is "well settled" that the participation clause protects an employee regardless of the merits of his or her EEOC charge); Pettway v. Am. Cast Iron Pipe Co., 411 F.2d 998, 1007 (5th Cir.1969) (fact that employee made false and malicious statements in the EEOC charge is irrelevant).

Weslolowski v. Napolitano, Civ. No. 11-163, 2013 WL 1286207 at

*7 (S.D. Ga. Mar. 25, 2013); see also, Booker v. Brown &

Williamson Tobacco Co., Inc., 879 F.2d 1304, 1312 (6th Cir.

1989) (holding that "the 'exceptionally broad protection' of the

participation clause extends to persons who have 'participated

in any manner' in Title VII proceedings" and that the

"[p]rotection is not lost if the employee is wrong on the merits of the charge").[8]

As have other courts, Chief Judge Wood also found support for not injecting "reasonable belief" into participation clause claims in light of the "clear distinction between opposition and participation" recognized in the EEOC Compliance Manual.

> An individual is protected from retaliation for opposition to discrimination as long as s/he had a reasonable good faith belief that s/he was opposing an unlawful discriminatory practice, and the manner of opposition was reasonable. An individual is protected against retaliation for participation in the charge process, however, regardless of the validity or reasonableness of the original allegation of discrimination.

Id. (quoting EEOC Compliance Manual, § 2-II(A)(5) (2009)).

While this Court is not aware of any direct guidance from the Fourth Circuit on this precise issue, it is confident, based on the distinction drawn in Laughlin between opposition activity and participation activity, that the Fourth Circuit would follow

---

[8] Chief Judge Wood also observed that the Seventh Circuit adopted a different rule that requires a participation clause plaintiff to "demonstrate that his EEO complaint was not 'utterly baseless.'" Id. (citing Mattson v. Caterpillar, Inc., 359 F.3d 885 (7th Cir. 2004)). This Court is aware that the Third Circuit, just a few months after issuing its opinion in Slagle, stated in dicta that "[w]hether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006) (citing Clark County v. Breeden, 532 U.S. 268, 271 (2001)).

the clear majority rule and not require participation clause plaintiffs to establish reasonable belief in the merits of their underlying charge or complaint. Accordingly, the Court's dismissal of Plaintiff's Title VII hostile environment claim is not a bar to her Title VII retaliation claim.[9]

## IV. CONCLUSION

For the above stated reasons, the Court will deny both Morgan State's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

Dated: July 29, 2013

---

[9] In a related argument, Morgan State argues that, because the Title VII retaliation framework is applied when adjudicating FMLA retaliation claims, a lack of merit to the underlying FMLA claim would defeat the FMLA retaliation claim. ECF No. 191 at 7. Because, as stated above, the Court disagrees with Morgan State's conclusion that it is entitled to summary judgment on the FMLA interference claim, this argument fails.